No. 2--00--0781

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

JAMES CABRERA, UNITED BUILDING MAINTENANCE, INC., and J.C. UNITED BUILDING MAINTENANCE, INC.,

Plaintiffs-Appellants,

v.

FIRST NATIONAL BANK OF WHEATON, FLORIAN BARBIE, THEODORE J. ANSANI, NELSON CARLO, EDWARD DIAMOND, JORD C. HAUGE, CHRIS A. HOULD, and SOMBOON SRIAROON,

Defendants-Appellees. 

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Du Page County.

No.  98--L--1271

Honorable

Hollis L. Webster,

Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiffs, 
James Cabrera, United Building Maintenance (UBM), Inc., and J.C. United Building Maintenance (JC-UBM), Inc.
, appeal the order of the circuit court of Du Page County dismissing their seven-count second amended complaint against defendants, 
First National Bank of Wheaton (FNB), Florian Barbie, Theodore J. Ansani, Nelson Carlo, Edward Diamond, Jord C. Hauge, Chris A. Hould, and Somboon Sriaroon.  The trial court held 
res judicata
 precluded plaintiffs from asserting the present action.  Plaintiffs also appeal the trial court's award of attorney fees
 to FNB.  For the reasons that follow, we affirm.

Before turning to the merits of this appeal, we must address several motions brought by the parties.  Both parties have made motions to supplement the record on appeal.  Those motions are granted.  Additionally, plaintiffs have moved to strike portions of FNB's reply filed in the trial court in support of its motion for attorney fees and also to strike one of the exhibits attached to the reply.  This motion is denied.  Finally, plaintiffs have moved to strike defendants' briefs.  Plaintiff contends that FNB, by using a smaller typeface, was able to exceed the page limitation imposed by Supreme Court Rule 341(a).  177 Ill. 2d R. 341(a).  Plaintiffs also complain that the individual defendants' briefs used a small typeface, but concede that these briefs were probably not excessively long.  177 Ill. 2d R. 341(a).  According to plaintiffs, the smaller typeface allowed FNB to compress 40% more material into its 41-page brief, resulting in the brief being effectively 56 pages long.  However, the page limit for a brief that is not printed is 75 pages (177 Ill. 2d R. 341(a)), and FNB's brief appears to be generated by computer rather than by a printing process.  Thus, even accepting plaintiffs' allegations and calculations as true, FNB did not violate this page limitation and plaintiff suffered no prejudice.  Therefore, plaintiffs' motion to strike defendants' briefs is denied.

BACKGROUND

On February 26, 1996, Cabrera entered into an agreement with FNB establishing a $700,000 line of credit.  UBM and JC-UBM guaranteed the loan.  The loan agreement stated that the loan was to mature on August 24, 1996.  The agreement also provided that the loan was to be evidenced by a note and that payments were to be made in accordance with the terms of the note.  The note's maturity date was July 31, 1996.  On August 9, 1996, plaintiffs received a letter from FNB's attorney stating that they were in default because the note had not yet been paid.  On the same day, FNB set off approximately $430,000 from an account maintained by UBM.

UBM filed a bankruptcy petition seeking reorganization under chapter 11 of the Bankruptcy Code (11 U.S.C. §1101 
et seq.
 (1994)) on August 12, 1996, in the United States Bankruptcy Court for the Northern District of Illinois.  On August 14, 1996, UBM filed a motion seeking the authority to use cash collateral in which FNB held a security interest.  Paragraph three of the motion stated the following:

"On August 9, 1996, First National Bank of Wheaton, without notice and in contradiction of ongoing workout negotiations, set off approximately $400,000 of Debtor's deposits and applied it toward the outstanding balance owed the Bank."

The bankruptcy court granted the motion and also provided FNB with a replacement lien in UBM's assets.  

On September 13, 1996, UBM filed its bankruptcy schedules.  In one schedule, where a debtor's personal property must be listed, UBM set forth "[c]laims against First National Bank of Wheaton and ComEd" as contingent and unliquidated claims.  Another schedule listed FNB as a secured creditor. 

On October 28, 1996, UBM filed a motion in which it sought the authority to obtain secured credit, grant priority liens, and modify the automatic stay.  This motion contained a paragraph stating that UBM commenced the bankruptcy action due to FNB's seizure of UBM's deposits.  Another paragraph stated that "[t]here is currently due and owing as of October 25, 1996 First National Bank of Wheaton under the loan and security agreement $93,828.18, plus attorneys fees and costs of approximately $10,500, or an approximate total of $104,500."  The purpose of this motion was to secure financing from the Gibraltar Financial Corporation (Gibraltar) to allow UBM to meet its operating expenses.  The agreement negotiated between UBM and Gibraltar required that Gibraltar have a first-priority security interest in UBM's assets.  The bankruptcy court entered an interim order approving UBM's motion on November 12, 1996.  This order contained a finding that UBM was indebted to FNB in the amount of $93,828 plus $11,700 for attorney fees.  On December 17, 1996, the bankruptcy court entered a final order approving UBM's motion.  This order included a finding that UBM was indebted to FNB in the amount of $69,107.  The order also mandated that FNB's claim be paid from the initial advance of funds made by Gibraltar.  As a result of these orders, FNB was no longer involved in the bankruptcy proceeding.  Instead of releasing its security interest in UBM's assets, FNB assigned the rights it acquired in the loan transaction to UBM and JC-UBM.

On September 23, 1997, UBM also filed a disclosure statement which contained the following statement: 

"UBM is in the process of evaluating its rights with regard to the conduct of First National Bank of Wheaton.  Although UBM believes that legal action against [FNB] may have merit, such a potential claim is not material to UBM's ability to satisfy its Chapter 11 plan obligations."

The statement also provided that, upon confirmation of the reorganization plan, all property of the estate not otherwise provided for shall vest in UBM free and clear of any liens, claims, and encumbrances.  The bankruptcy court subsequently approved UBM's reorganization on December 18, 1997, and the action was terminated on June 13, 1998.

Plaintiffs filed their complaint in the present action on December 8, 1998, in the circuit court of Du Page County.  Defendants filed a motion in the bankruptcy court seeking to bar plaintiffs' state court action.  The bankruptcy court found that it lacked jurisdiction to rule on the motion.

Thereafter, the trial court granted defendants' motion to dismiss, holding that plaintiffs' claims were barred by 
res judicata
.  The court noted that UBM had acknowledged that it was indebted to FNB in the bankruptcy proceeding and that the bankruptcy court had confirmed this debt in its orders.  The court reasoned that plaintiffs could not now come to state court and contest the same debt.  The court found that Cabrera and JC-UBM were privies of UBM and that the individual defendants were privies of FNB.  Accordingly, the court ruled that the preclusive effect of the bankruptcy court's orders extended to all parties involved in the instant suit.

Plaintiffs filed a motion to reconsider.  As part of this motion, plaintiffs submitted additional evidence, including documents from the bankruptcy proceeding, an affidavit from Cabrera, and an affidavit from Cabrera's bankruptcy attorney.  Defendants moved to strike these documents.  The court granted this motion, noting that the evidence was not newly discovered and that plaintiffs did not explain why it was not presented in response to defendants' motion to dismiss.  The court then denied plaintiffs' motion to reconsider.  Subsequently, the trial court granted FNB's request for attorney fees and costs in the amounts of $68,594.25 and $2,802.50.  This appeal followed.

ANALYSIS

Because this case comes to this court following a dismissal pursuant to section 2--619 of the Civil Practice Law (735 ILCS 5/2--619 (West 1998)), our review is 
de novo
.  
McGee v. State Farm Fire & Casualty Co.
, 315 Ill. App. 3d 673, 681 (2000).  A motion to dismiss under section 2--619 assumes the veracity of all well-pleaded facts.  
Thompson v. Frank
, 313 Ill. App. 3d 661, 663 (2000).  A court may consider all pleadings, depositions, and affidavits available.  
Thompson
, 313 Ill. App. 3d at 663.  The relevant issues on review are whether any genuine issue of material fact exists that should have precluded judgment and, if no such issues exist, whether the movant is entitled to judgment as a matter of law.  
Thompson
, 313 Ill. App. 3d at 663-64.

Because the integrity of a bankruptcy court judgment is at issue, federal
 law is relevant in assessing the preclusive effects of the judgment.  
Barnett v. Stern
, 909 F.2d 973, 977 (7th Cir. 1990); see 
Smith Trust & Savings Bank v. Young
, 312 Ill. App. 3d 853, 856-58 (2000).
  
As a practical matter, however, the test employed in this state and a majority of the federal courts is substantially similar.  See 
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 312-13 (1998).
  For 
res judicata
 to apply, the following elements must exist: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits."  
Conner v. Reinhard
, 847 F.2d 384, 394 (7th Cir. 1988); see also 
River Park, Inc.
, 184 Ill. 2d at 302.  
Res judicata
 bars not only claims actually decided in an earlier action but also claims that could have been asserted in the earlier action.  
Roboserve, Inc. v. Kato Kagaku Co.
, 121 F.3d 1027, 1034 (7th Cir. 1997); 
River Park, Inc.
, 184 Ill. 2d at 302.  Further, the doctrine bars claims based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action.  
Henry v. Farmer City State Bank
, 808 F.2d 1228, 1232-33 (7th Cir. 1986); see 
La Salle National Bank v. County Board of School Trustees of Du Page County
, 61 Ill. 2d 524 (1975).  The court rendering the earlier judgment must have been one of competent jurisdiction.  
Sanders Confectionery Products, Inc. v. Heller Financial, Inc.
, 973 F.3d 474, 480 (6th Cir. 1992); 
Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights
, 296 Ill. App. 3d 570, 578 (1998).  Several exceptions exist to the application of this doctrine.  See 
Rein v. David A. Noyes & Co.
, 172 Ill. 2d 325, 340 (1996).  One exception is that 
res judicata
 will not bar a subsequent action where the court in the earlier action expressly reserved the litigant's right to assert its claim at a later time.  
D&K Properties Crystal Lake v. Mutual Life Insurance Co.
, 112 F.3d 257, 259 (7th Cir. 1997).  Another exception, which is of particular relevance to this appeal, states that the doctrine does not apply where a limit in the subject-matter jurisdiction of the court rendering the earlier judgment prevented the plaintiff from seeking relief.  
Corestates Bank, N.A. v. Huls America, Inc.
, 176 F.3d 187, 198 (3d Cir. 1999); 
Altair Corp. v. Grand Premier Trust & Investment, Inc.
, 318 Ill. App. 3d 57, 63 (2000).

In the present case, we agree with the trial court's conclusion that all the elements of 
res judicata
 have been met.  First, sufficient identity exists between the parties in the bankruptcy action and the parties and their privies in the current action.  UBM and FNB were parties to the bankruptcy proceedings.  Cabrera was the sole shareholder, president, and chairman of the board of UBM and JC-UBM.  Such a relationship is sufficient to establish that JC-UBM and Cabrera were privies of UBM.  See 
Sanders Confectionery Products, Inc.
, 973 F.3d at 480; 
cf.
 
C.I.S., Inc. v. Kann
 76 Ill. App. 3d 109, 111 (1979) (considering the issue in the context of collateral estoppel).  Similarly, the individual defendants, who are members of the bank's board of directors, are privies of FNB.  See 
Henry
, 808 F.2d at 1235.  Second, an identity exists between the causes of action asserted in the two proceedings.  FNB asserted, through its filing of a proof of claim in the bankruptcy proceeding, that UBM was in debt to it as a result of the loan transaction UBM now bases its lender-liability action upon.  Both claims arise out of the parties' rights arising from the same transaction; both require the construction of the same documents.  See 
In re Baudoin
, 981 F.2d 736, 741 (5th Cir. 1993).  Further, in its complaint, UBM asserts that FNB's actions caused it to file bankruptcy, demonstrating the interrelated nature of these claims.  See 
Sure-Snap Corp. v. State Street Bank & Trust Co.
, 948 F.2d 869, 875 (2d Cir. 1991).  It is immaterial that UBM did not actually assert these rights in the bankruptcy proceeding.  See 
Roboserve, Inc.
, 121 F.3d at 1034.  Finally, the bankruptcy proceeding resulted in a final judgment on the merits.  The bankruptcy court issued a series of orders that resulted in FNB's claim being paid.  The effect of these orders was to remove FNB as a party to the bankruptcy, thus terminating the litigation between UBM and FNB.  These orders were final orders for the purposes of 
res judicata
.  See 
La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.
, 914 F.2d 900, 908 (7th Cir 1990) (holding a bankruptcy court's order issued prior to confirmation of debtor's liquidation plan allowing debtor to sell assets constituted a final judgment).

Plaintiffs raise a number of arguments, contesting each of the elements upon which 
res judicata
 is founded and contending that certain of the exceptions to the doctrine also preclude its application.  They also make some general arguments regarding the application of the doctrine in this case.  We will examine plaintiffs' arguments individually.

First, plaintiffs complain that the trial court improperly shifted onto them the burden of proving that 
res judicata
 did not apply.  While it is true that defendants bear the burden of proving the doctrine applies (
American National Bank & Trust Co. v. Village of Libertyville
, 269 Ill. App. 3d 400, 404 (1995)), plaintiffs fail to explain how the trial court shifted the burden to plaintiffs in the present case.  Plaintiffs' entire argument on this point consists of a conclusory statement that the burden was so shifted, which is not supported by citation to the record.  Accordingly, this argument is waived and warrants no consideration by this court.  
Department of Public Aid ex rel. Peavy v. Peavy
, 307 Ill. App. 3d 16, 23 
(1999).

Second, plaintiffs contend that the claims that were the basis of the instant case were not compulsory counterclaims and therefore should not be barred now.  Thus, according to plaintiffs, they were under no obligation to assert their claims in the bankruptcy proceeding.  However, whether a counterclaim is compulsory has no bearing on whether 
res judicata
 bars its assertion in a later proceeding.  
Sanders Confectionery Products, Inc.
, 973 F.2d at 484 ("[W]hat is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action").  Parenthetically, we note that under Illinois law no counterclaims are classified as compulsory (see 735 ILCS 5/2--610 (West 1998)); however, this does not preclude the application of 
res judicata
.  See 
Block & Co. v. Storm Printing Co.
, 40 Ill. App. 3d 92, 96 (1976); J. Parness, Illinois Civil Procedure §§5--4(b)(3), 7--9 (1998).  Plaintiffs' assertion that the claims set forth in the present case were not compulsory counterclaims in the bankruptcy proceeding is irrelevant.

Plaintiffs next argue that the trial court erred in barring their claims because they were not core proceedings in the bankruptcy.  To understand this argument, it is necessary to understand some basic concepts regarding the jurisdiction of bankruptcy courts.  The United States Supreme Court held the Bankruptcy Act of 1978 unconstitutional because it impermissibly vested Article III judicial power in Article I judges.  
Northern Pipeline Construction Co. v. Marathon Pipe Line Co.
, 458 U.S. 50, 87, 73 L. Ed. 2d 598, 625, 102 S. Ct. 2858, 2880 (1982).  Hence, federal district courts were given jurisdiction over bankruptcy cases.  
Barnett
, 909 F.2d at 978-79.  District courts may refer all bankruptcy cases, as well as matters related to a bankruptcy, to a bankruptcy judge.  
Sarno v. Thermen
, 239 Ill. App. 3d 1034, 1045 (1992).  The bankruptcy judge may hear the case and enter any appropriate orders and judgments regarding core matters.  
Sarno
, 239 Ill. App. 3d at 1045.  Core matters are those that are based upon a right created by federal bankruptcy law or that could not exist outside of a bankruptcy.  
Sanders Confectionery Products, Inc.
, 973 F.2d at 483.  Additionally, section 157(b) of the Judicial Code contains a nonexclusive list of matters that constitute core proceedings.  28 U.S.C.  §157(b) (1994).  This list includes matters concerning the administration of the bankruptcy estate, the allowance and disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, orders to turn over property of the estate, and confirmation of plans.  28 U.S.C. §157(b) (1994).  Bankruptcy courts also have jurisdiction over noncore matters.  
Barnett
, 909 F.2d at 979.  Noncore proceedings are those that are related to a bankruptcy.  
Barnett
, 909 F.2d at 979.  Noncore proceedings encompass any matter that could have a conceivable effect on a bankruptcy estate.  
Baudoin
, 981 F.2d at 740.  Regarding noncore matters, a bankruptcy judge may  enter orders or judgments only with the consent of the parties.  
28 U.S.C. §157(c)(2) (1994).  Absent such consent, the bankruptcy court may only hear the matter and submit proposed factual findings and conclusions of law to a federal district court.  
Sanders Confectionery Products, Inc.
, 973 F.3d at 483.  The district court must then conduct 
de novo
 review and enter a final order or judgment.  28 U.S.C. §157(c)(1) (1994).

According to plaintiffs, this limitation on the jurisdiction of bankruptcy courts precludes the application of 
res judicata
 regarding matters that would have constituted noncore proceedings in their bankruptcy action.  Defendants contend that this distinction is immaterial.  Both sides are able to provide ample case law in support of their positions, for the federal circuit courts of appeals appear to be divided on this issue.

Plaintiffs rely primarily on precedent from the Fifth and Seventh circuits.  See 
Barnett
, 909 F.2d 973; 
Howell Hydrocarbons, Inc. v. Adams
, 897 F.2d 183 (5th Cir. 1990).  In 
Howell
, the Fifth Circuit held that, because a bankruptcy judge is limited to making proposed findings of fact and conclusions of law in a noncore proceeding, 
res judicata
 bars only claims that would constitute a core claim in an earlier bankruptcy action.  
Howell
, 897 F.2d at 189-90; see also
 
I.A. Durbin, Inc. v. Jefferson National Bank
, 793 F.2d 1541, 1548 n.8 (11th Cir. 1986).  The Seventh Circuit adopted this position in 
Barnett
, 909 F.2d at 979.  But see 
In re Met-L-Wood Corp.
, 861 F.2d 1012, 1016-17 (7th Cir. 1988) (holding 
res judicata
 barred RICO suit following bankruptcy court's order confirming a sale of the debtor's assets).

It is unclear, however, whether these circuits remain committed to this position (see 
In re Int'l Nutronics, Inc.
, 28 F.3d 965, 970 (9th Cir. 1994)) and whether these holdings are intended to apply to situations like the one confronting us in the present case.  In a 1997 case involving lender liability arising from an alleged wrongful increase in the interest rate of a secured note, the Seventh Circuit stated, in 
dicta
, the following:

"Even if we had determined that Section 7.1 [of the approved liquidation plan] reserved this cause of action, an alternative res judicata bar to [plaintiff's] claim arises from the May 31, 1994 order allowing [defendant's] secured claim. [Plaintiff] did not object to the claim at the May 31 hearing despite having the opportunity to do so. [Citation.]  By pursuing damages from [defendant], [plaintiff] is in effect contesting the validity and amount of [defendant's] claim.  Because it had the opportunity to contest the claim before the bankruptcy court, *** it became barred by res judicata when [plaintiff] failed to do so. [Citation.]"  
D&K Properties Crystal Lake
, 112 F.3d at 262 n.4.

This passage either suggests a retreat from the position the court took in 
Barnett
 or indicates that claims of debtors that could be made in response to a claim of a creditor in a bankruptcy proceeding must be asserted in the proceeding and, in keeping with 
Barnett
, are core claims.  It is noteworthy that section 157(b)(2)(C) of the Judicial Code vests bankruptcy courts with core jurisdiction regarding 'counterclaims by the estate against persons filing claims against the estate.'  28 U.S.C. §157(b)(2)(C) (1994).  
Barnett
 is distinguishable from both 
D&K Properties
 and the present case on similar grounds.  
Barnett
 involved a claim by the trustee of the bankruptcy estate against the individual who filed bankruptcy.  Both 
D&K Properties
 and the present case concern claims made by debtors against creditors following the allowance of a claim made by the creditors in a bankruptcy action.  Conversely, the 
Barnett
 court expressly noted that the claim in that case did not fit into any of the categories enumerated in section 157(b).  
Barnett
, 909 F.2d at 978.  

We are cognizant that some courts have warned against interpreting section 157(b) broadly for fear of running afoul of the Supreme Court's decision in 
Northern Pipeline Construction Co.
, 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858.  See 
In re T.R. Paris & Family, Inc.
, 89 B.R. 760, 764-65 (Bankr. S.D. Ill. 1988).  We do not believe an interpretation that allows for the assertion of a counterclaim in a bankruptcy court that arises out of the same transaction forming the basis of a creditor's claim constitutes a broad interpretation of this provision.  It is difficult to conceive of an interpretation that would be narrower and still give some meaning to this provision.  This interpretation is in accord with the Fifth Circuit's handling of a similar matter.  
See 
Baudoin
, 981 F.2d 736.

Like Seventh Circuit case law, subsequent  Fifth Circuit case law indicates that the analysis set forth in 
Howell
, where the Fifth Circuit held 
res judicata
 was no bar to a noncore claim (
Howell
, 897 F.2d at 189-90), does not apply to the present case.  
 In 
Baudoin
, the Fifth Circuit held that the plaintiffs' lender liability claims, which alleged violations of various loan agreements that were the basis of the defendant's earlier filing of a proof of claim in a bankruptcy proceeding, were core proceedings and barred by 
res judicata
.  
Baudoin
, 981 F.2d at 737.  Further, the present case and 
Baudoin
 are distinguishable from 
Howell
 in a like manner.  In 
Howell
, the plaintiff was a creditor, rather than a debtor who failed to contest a proof of claim.

We agree with plaintiffs that cases from the Fifth and Seventh Circuits state that 
res judicata
 applies only to claims that would have been within the core jurisdiction of a bankruptcy court. However, this principle must be applied in light of other precedents from those circuits indicating that lender-liability actions constitute core proceedings.  

Several federal circuits reject the distinction between core and noncore claims for the purpose of
 
res judicata
.  See
 
Plotner v. AT&T Corp
, 224 F.3d 1161, 1173-74 (10th Cir. 2000); 
Corestates Bank, N.A. v. Huls America, Inc.
, 176 F.3d 187, 197 (3d Cir. 1999); 
In re Int'l Nutronics
, 28 F.3d 965, 969-70 (9th Cir. 1994); 
Sanders Confectionery Products, Inc. v. Heller Financial, Inc.
, 973 F.3d 474, 483 (6th Cir. 1992); 
Sure-Snap Corp. v. State Street Bank & Trust Co.
, 948 F.2d 869, 875 (2d Cir. 1991).  These courts generally have relied upon the fact that a district court may enter a final judgment in a matter heard before a bankruptcy judge.  See 
Corestates Bank, N.A.
, 176 F.3d at 197 ("[E]ven though a bankruptcy judge could not conclusively determine a non-core proceeding, the bankruptcy judge and the district court together could do so, and this was sufficient to permit full and fair litigation of the non-core claim").  Further, one commentator charges that the position taken by the Fifth Circuit and Seventh Circuit demonstrates a confusion between the concepts of jurisdiction, being the ability to entertain an action, and power, being the ability to grant a particular form of relief.  R. Avery, 
Chapter 11 Bankruptcy and Principles of Res Judicata
, 102 Com. L.J. 257, 286-88 (1997).  It thus appears that the position of the Fifth and Seventh Circuits has been widely rejected, with the opposite view holding prominence in the federal courts.

We need not interject ourselves further into this debate.  We note that two of our sister courts have adopted the reasoning set forth in 
Barnett
.  See 
Smith Trust & Savings Bank v. Young
, 312 Ill. App. 3d 853 (3d Dist. 2000); 
Sarno v. Thermen
, 239 Ill. App. 3d 1034 (1st Dist. 1992).  However, while setting forth the holding in 
Barnett
 regarding core and noncore claims, the Third District does not appear to have based its decision upon this distinction.  
Smith Trust & Savings Bank
, 312 Ill. App. 3d at 857-59.
  Because we conclude that plaintiffs' claims would have constituted core claims in the earlier bankruptcy action, they would be barred according to the analysis of any of the courts set forth above.

Lender-liability actions arising out of the same transaction that forms the basis of a creditor's proof of claim are core matters.  Initially, we note that the plain language of section 157(b)(2)(C) makes "counterclaims by the estate against persons filing claims against the estate" core proceedings.  28 U.S.C. §157(b)(2)(C) (1994).  Furthermore, the Fifth Circuit, which accepts the distinction between core and noncore claims for the purpose of 
res judicata
, has held that such claims are core proceedings.  
Baudoin
, 981 F.2d at 737.  In that case, a lender filed a proof of claim based on amounts due it arising from a series of loan transactions it had entered into with the plaintiffs.  This claim was subsequently allowed.  The plaintiffs later filed an action seeking damages for the breach of the loan agreements as well as for several related torts.  In finding the plaintiffs' claims barred by 
res judicata
, the court noted:

"In the [plaintiffs'] bankruptcy, the Bank filed a proof of claim, based on the loans it made to the corporation.  The [plaintiffs'] lender liability suit alleges violation of these very loan agreements.  If it believed that the agreements had been breached, [plaintiffs] could, and should, have filed an objection to that proof of claim, asserting a lender liability 'counterclaim'. " 
Baudoin
, 981 F.2d at 741.

Thus, the court held that claims arising from a transaction that also formed the basis of a proof of claim in a bankruptcy are core claims.  We find this reasoning persuasive.  In the present case, plaintiffs allege misconduct by FNB arising out of actions taken relative to the loan agreements between FNB and UBM.  Further, FNB's proof of claim in the bankruptcy proceeding was based on the loans made pursuant to the same agreement.  If UBM believed that FNB had breached the agreement under which it claimed a right to payment, it should have contested the claim during the bankruptcy proceeding.  Many courts have similarly concluded that a counterclaim against a creditor's proof of claim constitutes a core proceeding.  See, 
e.g.
,
 
In re Chapman
, 154 B.R. 258, 261 (Bankr. N.D. Ill. 1993); 
In re Glen Eagle Square, Inc.
, 132 B.R. 106, 113 (Bankr. E.D. Pa. 1991) (collecting cases); 
In re BKW Systems, Inc.
, 66 B.R. 546, 547-48 (Bankr. D. N.H. 1986); 
Jungkunz v. Fifth Third Bank
, 99 Ohio App. 3d 148, 650 N.E.2d 134 (1994).  Accordingly, we conclude that plaintiffs' claims against FNB would have been core proceedings in the bankruptcy action, and, as such, they are subject to being barred by 
res judicata
 in subsequent proceedings.

Before leaving this issue, we must address plaintiffs' contention that an order made by the bankruptcy court precludes a finding that 
res judicata
 bars the prior action.  After plaintiffs filed this action, defendants returned to the bankruptcy court seeking an order barring plaintiffs from proceeding with this suit.  Generally, the preclusive effect of a judgment is a question for the court presiding in the second case.  
Pettibone Corp. v. Easely
, 935 F.2d 120, 123 (7th Cir. 1991).  The bankruptcy court denied the motion, finding that it had neither core nor noncore jurisdiction over the motion.  In the course of so ruling, the bankruptcy court stated the following:

"Although 28 U.S.C. §157 contains a list of matters which are core proceedings, the list is not exhaustive and matters not enumerated may be core proceedings.  [Citation.]  A core proceeding 'evokes a substantial right provided by title 11' or 'by its nature could arise only in the context of a bankruptcy case.'  [Citation.]  The factual circumstances of this case do not place it within matters that are core proceedings.  Nothing in 28 U.S.C. §157(b)(2) encompasses the cause of action in question nor is it a cause of action which can only arise in bankruptcy.  [Citation.]  The breach of contract action is the creation of state law and would be pursued outside the bankruptcy context had the Debtor not filed for Chapter 11 protection.  [Citation.]  Therefore, this court has neither core nor related[-]to jurisdiction over the cause of action and it must stay with the Circuit Court."

Plaintiffs contend that this order forecloses the issue of whether 
res judicata
 bars the present action.  Plaintiffs fail to recognize that the bankruptcy court was considering its jurisdiction over defendants' motion after the bankruptcy case had ended.  Following the confirmation of a plan, the jurisdiction of a bankruptcy court shrinks.  
In re Cary Metal Products, Inc.
, 152 B.R. 927, 932 (Bankr. N.D. Ill. 1993).  Thus, the bankruptcy court was assessing its postconfirmation jurisdiction rather than its jurisdiction over plaintiffs' claim during the preconfirmation bankruptcy proceeding.  The latter is the relevant question for 
res judicata
 purposes.  Had the bankruptcy court considered this question, it likely would have come to a different conclusion.  In determining it lacked jurisdiction over defendants' motion, the court stated that "nothing in 28 U.S.C. §157(b)(2) encompasses the cause of action in question."  However, during the preconfirmation proceedings, something in that section would have encompassed plaintiffs' claims.  Section 157(b)(2)(C) makes "counterclaims by the estate against persons filing claims against the estate" core proceedings.  28 U.S.C. §157(b)(2)(C) (1994).  During the pendency of the bankruptcy action, plaintiffs' claims would have fallen within this provision; however, at the time defendants brought their motion to bar, this provision was inapplicable because there was no longer a proof of claim being asserted to which plaintiffs' claim would have been a counterclaim.  Because the bankruptcy court was considering a different question from the one confronting this court, its order has no bearing on the outcome of this appeal.

Plaintiffs next argue that the fact that FNB was not a party to the plan of reorganization makes 
res judicata
 inapplicable in this case.  In a related argument, plaintiffs contend that the orders that resulted in FNB's exiting the bankruptcy proceeding were not final orders.  The reason FNB was no longer a party at the time the reorganization plan was approved is that FNB's claim had been fully satisfied pursuant to the orders of the bankruptcy court entered in the course of UBM's efforts to secure alternate financing from Gibraltar.  According to plaintiffs, this means that FNB was not a party to the final order of the bankruptcy court.  Plaintiffs fail to recognize that the orders of the bankruptcy court resulting in FNB's having its claim satisfied and being removed as a party were final orders.  A final order is one that concludes litigation between the parties.  
Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n
, 805 F.2d 663, 666 (7th Cir. 1986); 
Flores v. Dugan
, 91 Ill. 2d 108, 112 (1982).
  An order of a bankruptcy court confirming a plan of reorganization has long been recognized as a final judgment and is given the same effect as the judgment of a district court for the purpose of 
res judicata
.  
Eubanks v. Federal Deposit Insurance Corp.
, 977 F.2d 166, 170-71 (5th Cir. 1992).
  Similarly, the bankruptcy court's orders that resulted in FNB's no longer being a party at the time of the plan confirmation were final orders.  The extent of the controversy between FNB and UBM in the bankruptcy proceeding was based upon FNB's proof of claim.  Once FNB's claim was satisfied, the litigation between the parties ended.  It has been recognized that a bankruptcy court's allowance of a claim is a final order.  
Siegel v. Federal Home Loan Mortgage Corp.
, 143 F.3d 525, 529-30 (9th Cir. 1998).  Thus, whether FNB was a party at the time of the plan confirmation is immaterial.  The orders that resulted in the satisfaction of their claim were final orders for the purposes of 
res judicata
.

Plaintiffs also argue that, during the bankruptcy proceeding, they reserved their right to pursue the current action at a later time.  Plaintiffs maintain that they fully disclosed the present cause of action during the bankruptcy proceeding and this resulted in the reservation of the cause of action such that they can pursue it now.  However, plaintiffs provide no authority that either directly or indirectly supports the proposition that the disclosure of a cause of action is sufficient to reserve it.  Thus, this argument is waived.  
Fuller v. Justice
, 117 Ill. App. 3d 933, 942 (1983).  That plaintiffs cite some 
dicta
 to support their position in their reply brief is immaterial.  Supreme Court Rule 341(e) applies to the appellant's main brief and requires that arguments be supported by authority.  177 Ill. 2d R. 341(e).  A different rule pertains to reply briefs.  See 177 Ill. 2d R. 341(g).  Moreover, even if we were to consider the merits of this argument, we would not be persuaded.  It is true that an exception to 
res judicata
 exists when the court in an earlier action expressly reserves the plaintiff’s right to bring a claim at a later time.  
Altair Corp.
, 318 Ill. App. 3d at 63.  The Seventh Circuit considered this issue in determining whether a bankruptcy proceeding barred a later cause of action and concluded that "[to] avoid res judicata the reservation of a cause of action must be both express, as in writing, and express, as in specifically identified."  
D&K Properties Crystal Lake
, 112 F.3d at 261.  While plaintiffs point to instances where their claim against FNB was disclosed, they do not indicate where the cause of action was reserved.  Thus, even if not waived, plaintiffs' argument would fail.

Plaintiffs next argue that the trial court abused its discretion by refusing to consider additional evidence plaintiffs submitted during their motion requesting that the court reconsider its dismissal of the current action.  This evidence was purportedly relevant to the issue of whether plaintiffs properly reserved their claim.  Because plaintiffs waived that issue, this argument is moot.  Furthermore, even if plaintiffs had not waived that issue, we would conclude that the trial court did not abuse its discretion by refusing to consider this additional evidence.  In support of their argument, plaintiffs rely on 
In re Estate of Garbalinski
, 120 Ill. App. 3d 767 (1983).  In that case, the trial court was held to have abused its discretion in failing to consider several documents in the possession of the executor of a will where the contestants to the will did not offer them in response to the executor's motion for summary judgment.  
Garbalinski
, 120 Ill. App. 3d at 771-73.  Though aware of the documents' existence, the contestants' attorney failed to communicate to the contestants' co-counsel that these documents existed.  The basis for the 
Garbalinski
 court's decision was that the executor had knowledge of the documents and failed to bring them to the court's attention and that the executor possessed a fiduciary duty to the decedent's estate.  
Garbalinski
, 120 Ill. App. 3d 772.  Plaintiffs do not argue that defendants had any fiduciary duty like the one relied upon by the court in 
Garbalinski
.  Plaintiffs do state that they were represented by different counsel in the bankruptcy and the current case; however, they do not represent that they were unaware of the evidence they sought to submit with their motion for reconsideration, as the attorney in 
Garbalinski
 did.  Accordingly, 
Garbalinski
 is distinguishable.  Generally, evidence submitted for the first time during a motion for reconsideration should not be considered absent some reasonable explanation of why it could not have been submitted in a timely manner.  
Delgatto v. Brandon Associates, Ltd.
, 131 Ill. 2d 183, 195 (1989).  Plaintiffs have provided no such explanation.

Plaintiffs further contend that, even if UBM is barred from asserting the current action, neither Cabrera nor JC-UBM is because they are not privies of UBM for 
res judicata
 purposes.  Generally, 
res judicata
 bars not only actual parties to litigation from reasserting a claim, but extends to their privies as well.  
Conner
, 847 F.2d at 394; 
River Park, Inc.
, 184 Ill. 2d at 302.  The term "privies" encompasses successors in interest, entities that controlled the earlier action, and entities whose interests were adequately represented in the earlier action.  
Latham v. Wells Fargo Bank, N.A.
, 896 F.2d 979, 983 (5th Cir. 1990).  JC-UBM and Cabrera fall within the second definition.  Cabrera was the sole shareholder of UBM and JC-UBM from 1993 until 1998.  He was also the president and chairman of the boards of both corporations.  As such, he was in a position to control the action during the bankruptcy proceeding.  See 
Sanders
, 973 F.2d at 481; 
Sure-Snap Corp
, 948 F.2d at 877; 
Grisanzio v. Bilka
, 158 Ill. App. 3d 821, 827 (1987).  Accordingly, we reject plaintiffs' argument.

Without citation to authority, plaintiffs contend that the trial court erred in ruling that the bank's directors were privies of FNB.  This argument is thus waived.  
Fuller
, 117 Ill. App. 3d at 942.  Moreover, we note that bank directors have previously been held to be privies of a bank for 
res judicata
 purposes where the plaintiffs brought an action under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961 through 1968 (1994)) arising out of a bank's conduct during the course of a loan transaction.  
Henry
, 808 F.2d at 1235 n.6.  

Finally, plaintiffs contest the trial court's award of attorney fees to FNB.  The trial court awarded fees and costs to defendants based on provisions allowing for their award contained in three documents executed during the loan transaction.  The loan agreement provided that FNB was entitled to any costs, fees, and expenses incurred if it employed counsel to represent it, 
inter alia
, "in any litigation, contest, dispute, suit or proceeding or to commence, defend or intervene or to take any other action with respect to any litigation, contest, dispute, suit or proceeding (whether instituted by Lender, Borrower, Guarantors, or any other person)."  Two other documents contained similar provisions.  The trial court held that this language encompassed FNB's actions in defending the present suit and that the award of fees was appropriate based upon these provisions.  Plaintiffs argue these provisions could not form the basis of an award because FNB assigned its interests created by these documents to UBM and JC-UBM.  In fact, the three documents FNB relied on in its motion for reimbursement for fees and costs are specifically referenced in a document titled "Assignment of Promissory Business Note and Related Loan and Collateral Documents."  In this document, FNB assigns its "entire right, title and interest" to UBM and JC-UBM.  FNB protests that, since plaintiffs' current suit is based on the loan transaction, it should be able to assert its rights under that agreement as well.  Plaintiffs respond that the assignment only involved FNB's rights arising from the loan transaction, not its liabilities.  However, plaintiffs cite no authority for this last proposition, except belatedly in their reply brief.  Thus, this argument is waived.  
Fuller v. Justice
, 117 Ill. App. 3d at 942; 177 Ill. 2d R. 341(e).

Plaintiffs also contend that the trial court erred in determining the amount of fees awarded in that no evidentiary hearing was held, FNB's request for fees was not supported by sufficient evidence, and the award of approximately $70,000 was not reasonable for securing a motion to dismiss.  We will address these contentions separately. 

Regarding plaintiffs' first contention, we conclude that plaintiffs waived their right to an evidentiary hearing.  While it is true that a party who requests an evidentiary hearing on attorney fees must be given one (
Bank of America National Trust & Savings Ass'n v. Schulson
, 305 Ill. App. 3d 941, 952 (1999)), the failure to request such a hearing results in a waiver of one's right to the hearing.  See 
Schroeder v. Meier-Templeton Associates, Inc.
, 130 Ill. App. 3d 554, 558 (1984); 
Wach v. Martin Varnish Co.
, 96 Ill. App. 3d 954, 957 (1981); 
cf.
 
Hupe v. Hupe
 305 Ill. App. 3d 118, 126-27 (1999) (considering the question in the context of an award of attorney fees in a dissolution of marriage action).  Plaintiffs do not indicate where in the record they requested an evidentiary hearing, if they did, in fact, do so.  Accordingly, we find no error in the trial court's awarding attorney fees without conducting an evidentiary hearing.

Plaintiffs next complain that FNB's fee request was insufficiently supported by evidence showing its reasonableness.  Plaintiffs correctly note that a petition for fees must specify the services performed, the time expended on them, the attorney who performed them, and the hourly rate charged for the services.  
Kaiser v. MEPC American Properties, Inc.
, 164 Ill. App. 3d 978, 984 (1987).  Additional factors of relevance include the skill and standing of the attorney involved, the difficulty of the work, the novelty or difficulty of the issues, the importance of the matter, the benefit obtained for the client, and the usual and customary charge for such services.  
Kaiser
, 164 Ill. App. 3d at 984.  Plaintiffs contend that the trial court failed to require FNB to provide any of the information required by 
Kaiser
.  This allegation is simply false.  

Initially, we note that defendant appended to its motion for fees a detailed billing statement.  This statement indicated the dates work was performed, by whom it was performed, the hourly rate charged, and the amount of time expended.  It also provided a summary of what work was performed regarding each entry.  In ruling on FNB's motion, the court first stated that it had reviewed this document.  The court then found that FNB's attorney's hourly rate was reasonable for an attorney of his experience.  The court went on to state that it was aware of the number of times the parties had to appear in the case, the size of the briefs submitted, and the amount of research required for the various arguments.  The court also noted the amount of discovery that took place.  In assessing the propriety of a fee request, a trial court may rely on its own experience.  
 
Heller Financial, Inc. v. Johns-Byrne Co.
, 264 Ill. App. 3d 681, 691 (1994).
  The determination of the reasonableness of a request for fees is a matter that lies within the discretion of the trial court.  
Heller Financial, Inc.
, 264 Ill. App. 3d at 690.

We find no abuse of discretion in the present case.  The trial court's experience and observation of the progress of the case, along with the material attached in support of FNB's petition for fees, provided adequate support for the court's determination.  The trial court was well aware of the difficulty of the issues involved, as well as the quality of FNB's counsel's work, and was in the best position to determine the appropriate award.  Given the material supporting the fee award and the careful reasoning appearing in the record, we will not interfere with the trial court's exercise of its discretion in this matter.

Finally, plaintiffs contend that the trial court failed to consider whether there was a reasonable connection between the amount expended by FNB and the result it achieved.  Essentially, plaintiffs argue that fees approaching $70,000 are unreasonable for securing the dismissal of a complaint.  In light of the considerations set forth in the preceding paragraph, we disagree.  We further note that this case involved complex issues and a voluminous record, which included a substantial number of documents from the earlier bankruptcy proceeding.  Plaintiffs' complaint consisted of seven counts.  Additionally, the complaint that was dismissed was plaintiffs' second amended complaint, thus entailing more work than if only one complaint had been filed.  Defending a motion for reconsideration was also involved.  In sum, substantially more work was required than is implied by the statement that FNB spent almost $70,000 to secure the dismissal of a complaint.  Moreover, the benefit conferred on the client is only one of the factors a court is to consider in assessing fees.  
Kaiser
, 164 Ill. App. 3d at 984.  Plaintiffs' argument here, at its core, takes this one factor and focuses on it to the exclusion of other relevant factors.  Therefore, we find no abuse of discretion in finding this amount reasonable merely because FNB spent close to $70,000 securing a dismissal of the case.

For the foregoing reasons, we affirm the trial court's judgment that dismissed plaintiffs' second amended complaint and awarded fees and costs to FNB.

Affirmed.

McLAREN and GEIGER, JJ., concur.