806 N.E.2d 245 (2004)
346 Ill. App.3d 859
282 Ill.Dec. 270
TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a Aetna Casualty and Surety Company, and Potomac Insurance Company, Plaintiffs-Appellants,
v.
Kirby MADDEN, Thomas Appleton, Jerry Ross, Paul Roberts, and Labor Specialists, Inc., Defendants (David Odom, Defendant-Appellee).
No. 5-03-0187.
Appellate Court of Illinois, Fifth District.
February 27, 2004.
*246 Robert C. Wilson, Wilson & Cape, Harrisburg, IL; Robert S. Grabemann, Martin, Brown & Sullivan, Ltd., Chicago, IL, for Appellants.
Evan L. Owens, Benton, IL, for Appellee.
Justice KUEHN delivered the opinion of the court:
Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company, and Potomac Insurance Company appeal from the trial court's November 20, 2002, order dismissing their complaint against David Odom on the ground that the suit was barred by the doctrine of res judicata. They also appeal from the court's February 20, 2003, denial of their motion to reconsider.
Illinois law requires virtually all employers to acquire workers' compensation insurance coverage for their employees. If the employer is unable to find such coverage in the open market, it can seek coverage in an involuntary market pool from which the employer is assigned an insurance carrier. Travelers Casualty and Surety Company (Travelers) and Potomac Insurance Company (Potomac) were poolinsurer participants.
The defendants operated an employee leasing business under different corporate entities. Initially, the business was known as MOAR Contract Services, Inc. Over time, MOAR Contract Services, Inc., developed a higher experience-modification factor of 1.97, which meant that over the three preceding years there had been a history of loss claims, resulting in the higher multiplier and corresponding higher workers' compensation premiums. Insurance for MOAR Contract Services, Inc., was apparently set to expire in December 1993.
New companies assigned a carrier through the involuntary market would be assigned a 1.0 experience-modification factor.
Towards the end of December 1993, a new company, S.I. Extended Contractors, Inc. (S.I. Extended), submitted an application to the Illinois Assigned Risk Plan for workers' compensation insurance coverage. The application was signed by S.I. Extended's president, David Odom, who indicated that S.I. Extended was a new business. Travelers was designated as the insurance carrier for S.I. Extended, with a policy period of December 1993 through December 1994.
For reasons unspecified in the record or briefs, the National Council on Compensation Insurance got involved in the matter and determined that MOAR Contract *247 Services, Inc., and S.I. Extended were essentially the same company and were therefore combinable for experiencerating purposes. The Illinois Department of Insurance affirmed this ruling. The meaning of this ruling was that Travelers was entitled to additional premium compensation for the policy plan year.
Just before S.I. Extended's coverage was set to expire with Travelers, S.I. Extended indicated that it would not be renewing its policy and that it was discontinuing its operation. At about the same time, an entity known as Labor Specialists, Inc., submitted an application to the Illinois Assigned Risk Plan, stating that it was a new business. In essence, Labor Specialists, Inc., was the former S.I. Extended. Potomac was designated as the insurance carrier for Labor Specialists, Inc., and issued a policy for the plan year of January 1, 1995, through January 1, 1996.
On April 10, 1998, Travelers and Potomac filed suit against all three corporate entities in Cook County circuit court. Due to improper venue, on October 5, 1998, the case was transferred to Jackson County circuit court. Thereafter, an amended complaint was filed, dropping S.I. Extended and MOAR Contract Services, Inc., as defendants and adding Kirby Madden, David Odom, Thomas Appleton, Jerry Ross, and Paul Roberts, men who had originally incorporated MOAR Contract Services, Inc.
On July 6, 1998, S.I. Extended filed a chapter 7 bankruptcy petition (11 U.S.C. § 701 et seq. (2000)). MOAR Contract Services, Inc., also filed for bankruptcy, but the date of this filing is not included in the record. In the S.I. Extended case, Travelers filed a proof of claim for $2,659,134, representing the amount of extra premiums to which it claims entitlement. It appears that Potomac also filed a notice of claim, in which it claimed $2,990,860, representing its extra premiums.
On February 19, 1999, while the S.I. Extended bankruptcy case proceeded, the bankruptcy trustee filed an adversary complaint to avoid fraudulent conveyances, against David Odom for $376,124.54, representing the amount of money he had transferred from S.I. Extended's bank accounts to his personal accounts within the one year preceding the bankruptcy's filing. The transfers began on February 3, 1998, and continued until March 5, 1998.[1] It was alleged that he did so "with actual intent to hinder, delay[,] or defraud Travelers Casualty and Surety Co. and Potomac Insurance Company of Illinois." The complaint goes on to state that the withdrawals led to the company's insolvency. In conclusion, she asked the bankruptcy judge to declare the transfers to be fraudulent conveyances and to enter a money judgment in the trustee's favor in the amount of the transferrals. On January 29, 2001, the bankruptcy judge granted the trustee's motion for a summary judgment on the matter, thereby setting aside the funds conveyances. Thereafter, on December 13, 2001, the bankruptcy judge granted the trustee's petition to settle the controversy by David Odom's payment of $44,000 into the bankruptcy estate.
Based upon the judgment against David Odom in the bankruptcy court, David Odom filed a motion to dismiss the amended complaint in Jackson County circuit court on the basis of res judicata. On *248 November 21, 2002, the trial court granted this motion, dismissing the amended complaint against David Odom. Travelers and Potomac asked the trial court to reconsider this order, and on February 20, 2003, the trial court denied this motion. Travelers and Potomac appeal these rulings to this court.
On appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2000)), we must determine "`whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.'" Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 110, 237 Ill.Dec. 100, 708 N.E.2d 1140, 1144 (1999) (quoting Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116-17, 189 Ill.Dec. 31, 619 N.E.2d 732, 735 (1993)). In other words, our review is de novo. In re Estate of Mayfield, 288 Ill.App.3d 534, 542, 223 Ill.Dec. 834, 680 N.E.2d 784, 789 (1997).
Res judicata is a legal doctrine that serves to bar a subsequent action if an initial action concluded with a final judgment on the merits in a court of competent jurisdiction involving the same claim and the same parties or their privies. Sherrod v. Ramaswamy, 314 Ill.App.3d 357, 361, 247 Ill.Dec. 371, 732 N.E.2d 87, 90 (2000); Cabrera v. First National Bank of Wheaton, 324 Ill.App.3d 85, 92, 257 Ill.Dec. 512, 753 N.E.2d 1138, 1144 (2001). Application of the res judicata doctrine would bar not only claims actually asserted in the previous cause of action but also claims that the party could have asserted in the previous cause of action. Cabrera, 324 Ill.App.3d at 92, 257 Ill.Dec. 512, 753 N.E.2d at 1145.
In bankruptcy court, the judges are able to "`hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, * * * and may enter appropriate orders and judgments.'" CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 196 (3d Cir.1999) (quoting 28 U.S.C. § 157(b)(1) (1988)). A "core" proceeding is defined as one based upon a legally created right (under bankruptcy laws) or one that could not exist outside of a bankruptcy. Cabrera, 324 Ill.App.3d at 94, 257 Ill.Dec. 512, 753 N.E.2d at 1147. Additionally, section 157(b) of the Judicial Code (28 U.S.C. § 157(b) (2000)) contains a list of situations that constitute "core" proceedings.
Bankruptcy courts also have jurisdiction over "noncore" proceedings, which are matters that could have a conceivable effect on a bankruptcy estate. Cabrera, 324 Ill.App.3d at 94, 257 Ill.Dec. 512, 753 N.E.2d at 1147 (citing Barnett v. Stern, 909 F.2d 973, 979 (7th Cir.1990)). With noncore matters, the bankruptcy judge can only enter orders or judgments with the consent of all the parties. 28 U.S.C. § 157(c)(2) (2000). Without this consent, the bankruptcy court can hear the matter, but then it must submit proposed findings of fact and conclusions of law to the relative federal district court, which then must conduct a de novo review and enter a final order or judgment. Cabrera, 324 Ill.App.3d at 95, 257 Ill.Dec. 512, 753 N.E.2d at 1147 (citing Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 483 (6th Cir.1992)); 28 U.S.C. § 157(c)(1) (2000).
David Odom contends that the plaintiffs were privies of the bankruptcy trustee and that, therefore, the parties were identical for the purpose of meeting that res judicata requirement. The plaintiffs contend that the bankruptcy trustee is not identified with them because the trustee could not have brought suit on behalf of Travelers *249 and Potomac against David Odom to enforce their claims in the bankruptcy context. In essence, the plaintiffs allege that the bankruptcy trustee is only allowed to gather funds on behalf of the bankrupt entity, not on behalf of the creditors.
The role of a bankruptcy trustee is not as limited as Travelers and Potomac argue. In a chapter 7 bankruptcy, a trustee not only must collect and liquify estate assets but must do so in a manner that is "compatible with the best interests of parties in interest." 11 U.S.C. § 704(1) (2000). The seventh circuit of the federal court of appeals has succinctly stated that a bankruptcy trustee "represents not only the rights of the debtor but also the interests of creditors of the debtor." Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1342 (7th Cir. 1987); In re Met-L-Wood Corp., 861 F.2d 1012, 1017 (7th Cir.1988). "Whether the trustee is representing the estate or `standing in the shoes' of the creditors, he has the duty to marshal the debtor's property for the benefit of the estate[ ] and thus the right to sue parties for recovery of all property available under state law." Koch Refining, 831 F.2d at 1343. The case cited by Travelers and Potomac does state that a bankruptcy trustee's role is "to collect any money that may be owing to the bankrupt entity." Steinberg v. Buczynski, 40 F.3d 890, 891 (7th Cir.1994). However, that case cites Koch Refining as its source and specifically states that it is limiting its statement of the law on this subject to the precise factual setting presented in that case. Without reference to the factual context of the claim at issue and the trustee's role in that claim, we conclude that, in a general sense, the bankruptcy trustee was in privity with Travelers and Potomac.
With respect to David Odom, we note that he was the sole shareholder of S.I. Extended and that, therefore, again in the general sense, he is in privity with the bankrupt entity. See Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 480 (6th Cir.1992); C.I.S., Inc. v. Kann, 76 Ill.App.3d 109, 111, 31 Ill.Dec. 714, 394 N.E.2d 916, 918 (1979).
We turn to the issue of the identity of claims. The trustee's adversary proceeding against David Odom was a claim that clearly fell within the trustee's powers, in that the trustee was seeking to obtain money that properly belonged to the estate. The trustee alleged that David Odom had improperly transferred corporate funds to his personal accounts at a time when the company was clearly headed towards bankruptcy. The money sought by the trustee was not directly related to Travelers' and Potomac's claims of fraud seeking unpaid insurance premiums. The only connection was that the money, if collected, would have been deposited into the estate, from which Travelers and Potomac would receive their pro rata share based upon their claims. But even assuming that there was an identity of claims for res judicata purposes, there is a jurisdictional problem with the assumption that the bankruptcy trustee could have brought a claim against David Odom on behalf of two of the creditors.
Generally speaking, a bankruptcy trustee lacks the power to assert a claim for damages on behalf of creditors. Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). Along these lines, the United States Bankruptcy Code (Code) (11 U.S.C. § 101 et seq. (2000)) limits the trustee to voiding transfers or bringing claims that the debtor could assert outside of the bankruptcy. D. Curry & S. Mahdi, Newly Emerging Standard on Trustee's Standing to Assert Claims on Behalf of Creditors, 120 Banking L.J. 917, 918 (2003). The *250 Bankruptcy Code provides the trustee with absolutely no power to bring a creditor's claim against the debtor. In rare limited situations, some courts have allowed the trustee to bring claims that would affect the entirety of the creditor body (where all creditors were injured by the lack of estate funds), as opposed to claims that would benefit one or two creditors. See Koch Refining, 831 F.2d 1339; In re Caribbean K Line, Ltd., 288 B.R. 908 (S.D.Fla.2002).
The rationale behind this lack of power is that the bankruptcy trustee is not likely the best person to assert the creditors' claims, as the trustee lacks knowledge of all the underlying facts. Furthermore, if a bankruptcy trustee was authorized to pursue claims of certain creditors, that pursuit would be "an inefficient or biased usage of the trustee's * * * resources." B. Hull, A Void in Avoidance Powers? The Bankruptcy Trustee's Inability to Assert Damages Claims on Behalf of Creditors Against Third Parties, 46 U. Miami L.Rev. 263, 266 (1991).
Revisiting the issue of the identity of claims, we conclude that the fact that Travelers and Potomac listed the fraud claim in their initial proof of claim and that the trustee cited this fraud as a rationale for David Odom's movement of corporate funds into his personal accounts does not necessitate a finding that the claims were identical. The adversary proceeding the trustee filed against David Odom was not a claim against David Odom for the fraud allegedly perpetuated against Travelers and Potomac. No proof of fraud was required, as the allegations were simply that David Odom transferred corporate funds to his personal accounts within one year of the bankruptcy's filing, contrary to law.
Despite res judicata rules governing claims that were or could have been brought, the bankruptcy trustee had no authority to pursue these fraud claims against David Odom on behalf of Travelers and Potomac. Because the trustee did not have the authority to pursue that type of claim, her failure to do so does not serve to bar Travelers' and Potomac's state court claims.
Travelers and Potomac also contend that the matter of their claims against David Odom would be a noncore proceeding and that, therefore, res judicata would not be a bar to their state court claims. See In re Sokol, 60 B.R. 294, 296 (Bankr.N.D.Ill. 1986); Barnett, 909 F.2d at 979-82. A determination of whether or not the claims of Travelers and Potomac were core or noncore is not necessary because the trustee lacked the authority to file such a claim, irrespective of its label.
In this case, the circuit court was asked to determine whether res judicata barred the state law claims of Travelers and Potomac because of the bankruptcy trustee's actions or inactions. Without reference to bankruptcy law and specifically to the jurisdictional-like powers of the bankruptcy trustee, the matter was decided strictly upon a broad application of the res judicata elements. Because of the specific bankruptcy laws applicable to the underlying case, the issue cannot be decided within a res judicata vacuum. This decision was erroneous and must be reversed.
For the foregoing reasons, the judgment of the circuit court of Jackson County is hereby reversed, and the cause is remanded.
Reversed; cause remanded.
CHAPMAN, P.J., and WELCH, J., concur.
NOTES
[1] The actual dates contained in this complaint are listed chronologically, but some designate the year as 1998, while others designate the year as 1999. We believe that the references to 1999 are simply typographical errors and that the trustee intended to specify that all withdrawals occurred within the span of a little more than four weeks in 1998.