In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3021

R. SHERWIN PARUNGAO,

*Plaintiff-Appellant,*

*v.*

COMMUNITY HEALTH SYSTEMS, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-04453 — **Robert W. Gettleman**, *Judge.*

ARGUED APRIL 26, 2017 — DECIDED MAY 24, 2017

Before WOOD, *Chief Judge*, and RIPPLE and SYKES, *Circuit Judges*.

PER CURIAM. This is the fourth lawsuit that Dr. R. Sherwin Parungao, a surgeon, has brought against affiliates of Galesburg Cottage Hospital. The district court ruled that Dr. Parungao's complaint was barred by res judicata and Illinois's closely related single-refiling rule. Because we agree that this

suit violates the doctrine of res judicata, we affirm the district court's judgment.[1]

# I

# BACKGROUND

Dr. Parungao began practicing surgery at Galesburg Cottage Hospital in 2006. He first worked as a private practitioner, but later accepted employment with Knox Clinic, which supplies doctors for the hospital. Knox Clinic told Dr. Parungao in May 2013 that it was discharging him without cause, as allowed under his employment agreement. Dr. Parungao believes that the hospital orchestrated this discharge to harm his career. He asserts that before Knox Clinic fired him, the hospital's medical executive committee manipulated the peer-review process to insinuate that he had performance problems and make it difficult for him to secure future employment. Dr. Parungao later resigned from Galesburg and sought other employment, but alleges that he was thwarted in those efforts by the hospital and its doctors.

This is not the first time Dr. Parungao has attempted to recover based on these, or similar, allegations. His first suit against Galesburg Cottage Hospital and its corporate affiliates was voluntarily dismissed. *See Doe v. Cmty. Health Sys. Prof'l Servs. Corp., Galesburg Hosp. Corp., & Knox Clinic Corp.*, No. 2013-CH-73 (Knox Cty., Ill. Cir. Ct., filed July 15, 2013). The day after he voluntarily dismissed that action, Dr. Parungao filed another petition in the same court, requesting to

---

[1] The district court had jurisdiction over this case under 28 U.S.C. § 1332. Our jurisdiction is premised on 28 U.S.C. § 1291.

refile the case under seal and under a fictitious name. That petition was denied, so no complaint or suit was filed. Dr. Parungao then brought another suit in state court against the chief of the medical staff at Galesburg, Dr. Daniel K. Piper. *See Parungao v. Piper*, No. 2013-L-40 (Knox Cty., Ill. Cir. Ct., filed Oct. 21, 2013). Because this appeal and the defense of res judicata rest on the relationship between the *Piper* litigation and Dr. Parungao's current federal lawsuit, we briefly compare the allegations set forth in the two relevant complaints.

In October 2013, Dr. Parungao sued Dr. Piper for defamation in circuit court in Knox County, Illinois. That lawsuit focused on the time during which Dr. Parungao sought employment at other hospitals after he resigned from Galesburg. He alleged that Dr. Piper had made false and harmful representations to hospital entities with which he sought employment. These representations, made in letters bearing Galesburg Cottage Hospital letterhead, suggested to those entities that Dr. Parungao had been the subject of some type of nondisciplinary action related to his professional conduct. The relevant allegations from the *Piper* complaint are set forth below:

> 7.      Although Dr. Parungao's privileges to practice at GCH [Galesburg Cottage Hospital] remained intact, Dr. Parungao ceased performing surgeries at GCH on or about May 15, 2013, and he thereafter sought employment elsewhere.
>
> 8.      On or about May 28, 2013, Dr. Piper represented to Gaye Shaw, Director of Medical Staff Affairs at St. Mary's Hospital in Centralia, Illinois (collectively "St. Mary's") that he was authorized to respond to a request by St. Mary's

for verification of Dr. Parungao's staff privileges and credentials at GCH.

9.     On or about May 28, 2013, Dr. Piper represented to Natalie Brown, Medical Staff Coordinator at Weatherby Locums in Fort Lauderdale, Florida (collectively "Weatherby") that he was authorized to respond to a request by Weatherby for verification of Dr. Parungao's staff privileges and credentials at GCH.

10.    Dr. Piper informed St. Mary's and Weatherby that Dr. Parungao was not the subject of any disciplinary action as a member of the Medical Staff, he was the subject of "other action" as a result of an ongoing review related to his participation in an impaired practitioner program.

11.    Dr. Piper defined "other action" as follows:

> **Other Actions**:
>
> This category includes any resignation while under investigation, termination of the physician's relationship with the Hospital via contract for reasons related to competence or professional conduct, active participation in an impaired practitioner program due to a directive of the MEC [Medical Executive Committee], peer review committee or impaired practitioner committee (where disclosure is

permitted by law), and formal repri-
mands.

…

16. The information Dr. Piper conveyed to
St. Mary's and Weatherby regarding the exist-
ence of "other action" against Dr. Parungao was
false.[2]

The Illinois circuit court granted Dr. Piper's motion to dis-
miss for failure to state a claim of defamation, and the Appel-
late Court of Illinois affirmed the dismissal. *Parungao v. Piper*,
No. 3-14-0197, 2014 WL 7251127, at *4–8 (Ill. App. Ct. Dec. 18,
2014), *reh'g denied and amended* (Ill. App. Ct. Jan. 28, 2015).

Dr. Parungao then filed the present lawsuit in federal court
in the Northern District of Illinois.[3] While the earlier *Piper* suit
focused on the letters Dr. Piper had sent that kept Dr. Pa-
rungao from obtaining employment with Weatherby and St.
Mary's (and named only Dr. Piper as a defendant), the present
suit focuses on the events leading up to those same letters
(and excludes Dr. Piper as a defendant). Dr. Parungao alleges
that Galesburg's medical staff president, Dr. Mark E. Davis,
initiated a sham peer-review process against him for personal
reasons. He refused to participate and later received confir-
mation that "no adverse action was ever taken or recom-
mended against him."[4] Dr. Parungao alleges that the process

---

[2] R.91-7 at 3–4.

[3] *Parungao v. Cmty. Health Sys., Inc., Cmty. Health Sys. Prof'l Servs. Corp.,
Galesburg Hosp. Corp., Knox Clinic Corp., & Davis*, No. 1:15-cv-04453, (N.D.
Ill. filed May 20, 2015).

[4] R.65 at 7.

undertaken by the hospital constituted a breach of contract, tortious interference with contractual relations, intentional infliction of emotional distress, and civil conspiracy.

As in the *Piper* complaint, Dr. Parungao also alleges that, after this process was initiated, he "sought employment with other healthcare entities," which "submitted requests for verification that [he] was in good standing on GCH's medical staff."[5] And, also just as in the *Piper* complaint, he alleged that he had trouble obtaining further employment with those healthcare entities because of the responses of the hospital defendants. But rather than attribute his troubles specifically to Dr. Piper's letters to Weatherby and St. Mary's, he broadened his allegation as follows:

> 44.    Despite the fact that plaintiff was at all times in good standing and not subject to any disciplinary proceedings or adverse actions, GCH refused to provide these healthcare entities with verification of the same, thereby hindering plaintiff's ability to obtain privileges with the medical staffs of other healthcare entities.[6]

Nonetheless, this timeline of events, including Galesburg's "refusal to verify" Dr. Parungao's good standing, is consistent with the timeline in *Piper*, which alleged that Dr. Piper's responses to Weatherby and St. Mary's contained false and harmful information about his standing on the medical staff.

---

[5] *Id.*

[6] *Id.*

Dr. Parungao moved in the district court for a protective order and supervision of discovery, and in his attached memorandum of law he confirmed this overlap between the allegations in his two suits. His motion referred to and attached Dr. Piper's letters to Weatherby and St. Mary's and used language similar to that used in his *Piper* complaint to describe the content of those letters as false. The motion attributed the letters to the defendants in *this* case and characterized them as evidence of a conspiracy among the hospital defendants to ruin his professional standing. The motion sought a protective order to allow Dr. Parungao to obtain potentially privileged information from the hospital defendants about the "other actions" described in Dr. Piper's letters as well as any other supposed peer-review processes that had occurred. The district court denied Dr. Parungao's motion.

All but one of the defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Community Health Systems, Inc., moved to dismiss for lack of personal jurisdiction.) They argued that Dr. Parungao's complaint was barred by res judicata and Illinois's related single-refiling rule, *see* 735 ILCS § 5/13-217, which provides that a suit, once voluntarily dismissed, can be refiled only one time. Several of the defendants referred to Dr. Parungao's motion for a protective order in their motions to dismiss, asserting that Dr. Parungao's motion in effect acknowledged that his federal suit was based on the same facts as alleged in the *Piper* suit. Dr. Parungao, however, responded that there was no privity between Dr. Piper and the medical defendants, so that neither res judicata nor the single-refiling rule could support dismissal.

The district court dismissed Dr. Parungao's complaint. It ruled that Dr. Parungao was impermissibly attempting to re-litigate the *Piper* complaint, which had been fully and fairly litigated in the Illinois courts. The district court decided that both the current suit and the *Piper* suit were "refilings" of Dr. Parungao's first, voluntarily dismissed, complaint in state court. Accordingly, the court concluded that both res judicata and the single-refiling rule supported dismissal. Dr. Parungao timely appeals.

## II

## DISCUSSION

Dr. Parungao contends that neither res judicata nor the Illinois single-refiling rule supported dismissing his complaint. He argues that the question whether the hospital defendants in this case are in "privity" with Dr. Piper, as required for pre-clusion rules to apply, cannot be decided now. We conclude that the district court correctly ruled that res judicata barred the complaint, and therefore do not reach the applicability of Illinois's single-refiling rule.

The principles governing our review are clearly established. In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). In this procedural posture, district courts

ordinarily should not dismiss a complaint based on an affirmative defense such as res judicata.[7] But when it is "clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal is appropriate. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *see Watkins v. United States*, ___ F.3d ___, No. 16-2109, 2017 WL 1505314, at *2–3 (7th Cir. Apr. 27, 2017) (ruling that court could take judicial notice of earlier state-court complaint and thereby dismiss based on an affirmative defense). Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492–93 (7th Cir. 2011); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

We apply Illinois's law of res judicata to this diversity action. *See Harmon v. Gordon*, 712 F.3d 1044, 1054 (7th Cir. 2013) (applying Illinois law). The doctrine of res judicata, also known as claim preclusion, applies if there is "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies." *Rose v. Bd. of Election Comm'rs for the City of Chi.*, 815 F.3d 372, 374 (7th Cir. 2016) (applying Illinois law). If the doctrine applies, the plaintiff is barred from raising "not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d

---

[7] *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010); *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

1075, 1079 (7th Cir. 2011) (quoting *Hudson v. City of Chicago*, 889 N.E.2d 210, 217 (Ill. 2008)) (applying Illinois law).

Illinois employs a "transactional test" to decide whether complaints allege the same cause of action. *Id.* at 1079–80. Under this test, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)). There need not be a "substantial overlap of evidence," so long as the complaints arise from the same transaction or "series of connected transactions." *Id.* at 1080. As for privity, Illinois courts conclude that it exists "between parties who adequately represent the same legal interests." *Id.* (quoting *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992)).

We agree with the district court that all of these elements are present in this case. First, the parties do not dispute that there was a final judgment in Dr. Parungao's suit against Dr. Piper. That action, the *Piper* suit, ended in a dismissal with prejudice for failure to state a claim. *See Rose*, 815 F.3d at 374 (noting that involuntary dismissal is "unquestionably" final judgment on the merits under Illinois law). The district court thus correctly concluded that this first element of res judicata was present.

With respect to the second element, identity of the causes of action between the *Piper* litigation and the current suit, we look to the filings in the earlier case. In doing so we are persuaded, as was the district court, that Dr. Piper's letters on Galesburg letterhead to the other hospital entities were "just one act in the series of events that led to plaintiff's problems

with and ultimate resignation from GCH," the basis of the present suit.[8] Our earlier decision, *Chicago Title Land Trust Co.*, 664 F.3d 1075, provides ample authority. In that case, the plaintiffs had sued two defendants for fraud based on certain representations that those defendants had made. They then brought another suit alleging fraud and contract claims against different defendants, but citing the same representations. *Id.* at 1079–80. We found that the two cases involved the same series of events. *Id.*; *see also Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558–59 (7th Cir. 2014) (holding that employment discrimination lawsuit against former employer and several of its employees was precluded under Illinois law by earlier defamation case against supervisor and coworker when the two actions were based on the same series of connected transactions).

In this case, the same pattern is repeated: In *Piper*, Dr. Parungao alleged defamation based on Dr. Piper's representations to Weatherby and St. Mary's about his performance. In the present case, Dr. Parungao challenges the peer-review process that led to those same representations that impaired his job prospects. While his theory of recovery is different here than in *Piper*, both suits arise out of statements made around the time he resigned that made it difficult for him to get another job. Under a "pragmatic" view, *see Huon*, 757 F.3d at 558 (applying Illinois law), Dr. Parungao's federal complaint arises out of the same series of connected events alleged in *Piper*.

We now turn to the matter of privity. In ruling that Dr. Piper (in *Piper*) and the hospital defendants (in this case)

---

[8] R.143 at 10.

are in privity, the district court observed that Dr. Piper had maintained in the earlier suit that his legal interests were aligned with those of the hospital defendants. The court concluded that both Dr. Piper and the hospital defendants "were each defending the integrity of the peer review process at the hospital and that the employment information was disseminated in a proper manner."[9]

Although Dr. Parungao was careful not to mention Dr. Piper in his federal complaint, his own motion for a protective order before the district court reveals the basis for privity because the motion treats the hospital defendants as responsible for the letters that Dr. Piper composed on hospital letterhead. First, the motion acknowledges that Dr. Parungao bases his theory of liability in this case partly on those letters. In addition, the motion explains that the federal case alleges a conspiracy among the hospital defendants to harm Dr. Parungao's reputation with other healthcare entities by sending letters with false information. These are the letters sent by *Dr. Piper*. Finally, Dr. Parungao even attached Dr. Piper's letters to his motion, to emphasize that he sought to hold the hospital defendants vicariously liable for those letters. Dr. Parungao therefore has characterized the legal interests of the hospital defendants and Dr. Piper as aligned. *See United States v. Egan Marine Corp.*, 843 F.3d 674, 678–79 (7th Cir. 2016) (explaining relationship between vicarious liability and privity for preclusion purposes). He has pleaded himself out of court on the issue of privity.

Dr. Parungao responds on appeal that the allegation in the federal complaint that the hospital "refused" to verify his

---

[9] *Id*. at 11–12.

good standing to other entities does *not* refer to Dr. Piper's letters, but to some other, unexplained event. He also contends that it is possible that Dr. Piper's letters to Weatherby and St. Mary's were sent without authority from the hospital, and that the hospital defendants in this case might disclaim responsibility for Dr. Piper's actions. Thus, he argues, the hospital defendants' legal interests in this case are not necessarily aligned with those of Dr. Piper in his defamation suit. Dr. Parungao's theory might have been plausible had he not, in his motion for a protective order, taken a position that contradicts the one he now advances for the first time on appeal. Because his theory is implausible in light of his own characterization of his case in his motion for a protective order, we may rely on that characterization to affirm the district court's dismissal. *See Watkins*, 2017 WL 1505314, at *2–3 (declining to ignore plaintiff's previous filing establishing statute-of-limitations bar "[a]bsent a claim that there is a plausible, good-faith basis to challenge" its legitimacy).

## Conclusion

The district court correctly found that Dr. Parungao's complaint was barred by the doctrine of res judicata. We therefore affirm the judgment of the district court.

AFFIRMED