In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3838

HEUNG K. BAEK, et al.,

*Plaintiffs-Appellants*,

*v.*

PATRICIA A. CLAUSEN, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-03928 — **Thomas M. Durkin**, *Judge*.

ARGUED SEPTEMBER 27, 2017 — DECIDED APRIL 2, 2018

Before RIPPLE, SYKES, and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Clark & Leland Condominiums, LLC ("C & L"), and its shareholders, Heung Baek and Hyun Baek-Lee (collectively "the Baeks"), brought this action against Northside Community Bank ("NCB") and several of its employees, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c).

The predicate acts set forth in the complaint focus on the allegedly fraudulent and abusive acts committed by NCB in the course of a lending relationship with the plaintiffs.

This RICO action is the last in a series of legal actions between the parties: the first, a foreclosure action ("Foreclosure Action"), was brought by NCB in state court in 2010; the second, an action on the loan guaranty ("Guaranty Action"), followed in 2012; and, finally, a fraud and breach of contract action ("Parallel Action"), was brought by Mr. Baek and Ms. Baek-Lee in 2014. The latter two actions were consolidated in the Circuit Court of Cook County.

In response to the RICO complaint, NCB initially moved to dismiss, or in the alternative, to stay the proceeding under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). After the state court struck or dismissed all of the plaintiffs' claims and granted summary judgment to NCB on its claims, NCB amended its motion to assert an alternative ground for dismissal: res judicata. The district court granted NCB's amended motion.

On reconsideration, the district court vacated its earlier dismissal because it is not clear under Illinois law whether an adjudication is final for purposes of res judicata if an appeal is pending. The district court therefore stayed the action pending the disposition of the plaintiffs' appeal in state court. After the state appellate court affirmed the judgment in favor of NCB, the district court reinstated its dismissal with prejudice.

We now affirm. The district court correctly determined that res judicata precludes the plaintiffs' present action. There has been a final judgment on the merits, the same parties are

litigating here as in state court, and the claims arise from a single group of operative facts. Moreover, given the nature and extent of litigation that had taken place in the state court, we perceive no abuse of discretion in the district court's decision to stay the RICO action under *Colorado River*.[1]

# I

# BACKGROUND

## A. Facts

The facts, as set forth in the plaintiffs' complaint, allege the following events.[2] The Baeks came to the United States from Korea in 1999. Mr. Baek desired to develop real estate and, to this end, purchased property through his limited liability company, C & L.[3] The property was financed by Labe Bank, and Bill Frank was the loan officer who serviced the loan. Frank later moved to NCB and asked Mr. Baek to switch his business to NCB. Frank represented that NCB would provide Mr. Baek a larger construction loan at a lower rate than Labe Bank had provided. In July 2006, Mr. Baek entered a construction loan with NCB for approximately $11,750,000.

---

[1] The district court had jurisdiction over this case under 28 U.S.C. § 1331. Our jurisdiction is premised on 28 U.S.C. § 1291.

[2] "In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

[3] Mr. Baek is the "manager" and "sole member" of C & L. *See* R.1, ¶¶ 1, 12.

Mr. Baek executed a construction loan agreement, construction mortgage, promissory note, and commercial guaranty. NCB had not indicated that it would require Ms. Baek-Lee to sign a guaranty; however, at closing NCB presented a guaranty document which had lines for both of their signatures. Ms. Baek-Lee did not sign the guaranty at closing. She does not recall ever signing a commercial guaranty; nevertheless NCB maintains that, in January 2008, eighteen months after closing, she did sign a guaranty.

NCB, C & L, and Mr. Baek then entered into several loan modification agreements. One of those loan modification agreements bears Ms. Baek-Lee's signature. Ms. Baek-Lee contends that her signature was forged and, in support, notes that her passport reflects that she was out of the country on the date the document purportedly was signed.

The relationship between Mr. Baek and NCB was rocky almost from the outset. In July 2007, NCB demanded that Mr. Baek deposit more money in the construction loan account because the loan was "out of balance";[4] although Mr. Baek disagreed with this assessment, he nevertheless complied with this request. NCB then began to demand additional collateral, including the title to Mr. Baek's home. Even when Mr. Baek acquiesced, however, NCB refused to disburse funds to C & L's contractors. NCB also required Mr. Baek to sell other real estate and to give up control of the construction operating account. Although NCB would not release funds to Mr. Baek or to C & L, NCB did withdraw its

---

[4] *Id*. ¶ 17.

attorney's fees from the account.[5] As a result of these withdrawals, at least one of C & L's checks was returned for insufficient funds.

According to the Baeks' federal complaint, NCB also frustrated Mr. Baek's efforts to comply with its demands. For instance, it required the Baeks to provide their 2009 income tax returns, but refused to release statements concerning the operating account which were necessary for the Baeks to complete those returns.

On October 15, 2010, NCB issued a default letter. Mr. Baek then put a stop payment on his monthly payment to NCB, which prompted NCB to institute foreclosure proceedings against C & L.

## B.  State Court Proceedings

On October 26, 2010, NCB filed the Foreclosure Action against C & L in state court. Just a few days later, NCB filed the Guaranty Action in the Circuit Court of Cook County against the Baeks as guarantors on the loan. The Baeks filed several affirmative defenses and a counterclaim.

On January 29, 2012, while the Guaranty Action was pending, the Baeks and Soo Corporation d/b/a Blue Ocean Contemporary Sushi[6] filed the Parallel Action against NCB and its vice-president, William Kivit. The plaintiffs alleged seven claims against NCB and Mr. Kivit related to the construction

---

[5] *Id*. ¶ 22.

[6] Mr. Baek is described as an "owner-investor" in Soo Corporation. R.5-6 at 1, ¶ 1.

loan: bad faith breach of contract, breach of fiduciary duty, constructive trust, fraud, accounting, implied contract/unjust enrichment, and emotional distress. This Parallel Action was consolidated with the Guaranty Action.

On February 7, 2012, the Circuit Court of Cook County entered a judgment of foreclosure and sale of the property at issue. The property was sold on October 9, 2012, and a deficiency judgment was entered against C & L for $2,863,489. C & L moved for reconsideration on numerous grounds, including that NCB committed notary fraud; NCB was prohibited from filing the foreclosure action; NCB's enforcement of the loan documents constituted extortion, fraud, misrepresentation, and violated RICO; and NCB took advantage of non-English speakers. C & L's motion was denied.

Also in October 2012, NCB filed motions to strike and to dismiss the Baeks' affirmative defenses and counterclaims in the Guaranty Action and to dismiss the Parallel Action. With respect to the affirmative defenses, NCB argued that many of the defenses—including unjust enrichment, fraud in the inception, and failure to perform—were legally flawed. NCB also argued that, to the extent there was any merit to the affirmative defenses, only C & L, not the Baeks, had standing to assert them. NCB further maintained that any defenses in favor of C & L were barred by res judicata and collateral estoppel based on the judgment in the Foreclosure Action. NCB made similar arguments with respect to the Baeks' counterclaims and to the claims raised by the Baeks and Soo Corporation in the Parallel Action.

On November 28, 2012, C & L, the Baeks, and Soo Corporation moved to amend their complaint in the Parallel Action to include, among other new allegations, a RICO claim. The

RICO claim alleged racketeering activity by means of extortionate collections, fraudulent notarial acts, and bank fraud. It named as defendants Mr. Kivit, Patricia Clausen, Belinda Baier, Tasha Spencer[7] and John Does.

On May 30, 2013, the Circuit Court granted NCB's motion to strike and to dismiss the Baeks' affirmative defenses and counterclaims in the Guaranty Action. It also granted NCB's motion to dismiss Counts I through VII of the complaint in the Parallel Action. The court gave the Baeks and Soo Corporation leave to replead Counts VIII through XI—their proposed amendments in the Parallel Action—within twenty-eight days. The Baeks and Soo Corporation did not file an amended complaint within the time allowed by the Circuit Court.

On August 19, 2013, NCB moved for summary judgment on the merits of the Guaranty Action. On April 24, 2014, ten months after the deadline for filing an amended complaint, the Baeks filed a motion asking the Circuit Court to reconsider its May 30, 2013 order dismissing their affirmative defenses, counterclaims, and Counts I through VII of the Parallel Action; they also requested leave to file an amended complaint, including a new RICO claim. The new RICO claim differed from the one in their November 28, 2012 proposed amended complaint, but mirrors the present federal RICO action.[8]

On September 11, 2014, the Circuit Court denied the Baeks' motion to reconsider and for leave to file an amended

---

[7] These individuals are employees of NCB.

[8] *Compare* R.5-10 at 23–51 *with* R.1.

complaint. It also granted NCB's motion for summary judgment in the Guaranty Action, which rendered the Baeks jointly and severally liable for $2,359,743.55.

On October 10, 2014, the Baeks and Soo Corporation filed a post-judgment motion to vacate the Circuit Court's summary judgment ruling and for leave to file amended defenses and counterclaims. The court denied those motions on October 30, 2014. The Baeks then appealed the judgment in the Guaranty Action and the dismissal of their Parallel Action.

On March 24, 2016, the state appellate court affirmed the summary judgment for NCB and the dismissal of the Baeks' claims.[9]

## B.

On May 28, 2014, the Baeks and C & L filed this federal RICO action. To place the filing in historical context, it occurred after the Circuit Court had dismissed the Baeks' affirmative defenses and counterclaims in the Guaranty Action, and Counts I through VII of the Parallel Action. It also followed the Baeks' motion to reconsider that dismissal order and their motion to amend the Parallel Action to include a RICO claim. At the time of filing, however, the Circuit Court had not yet ruled on NCB's motion for summary judgment in the Guaranty Action.

The underlying fraudulent acts alleged in the federal RICO claim include: (1) extortion of borrowers by NCB by

---

[9] *See* R.38-1.

claiming that loans were "out of balance";[10] (2) fraud in the execution of notarized documents (with respect to Ms. Baek-Lee's signature on the modification agreements);[11] (3) manipulation of the construction loan agreement;[12] and (4) unauthorized withdrawal of funds from the operating account.[13] On July 31, 2014, NCB moved to dismiss the case, or in the alternative, to stay proceedings pursuant to the *Colorado River* doctrine.

Before the plaintiffs responded to the motion to dismiss, the Circuit Court entered its September 11, 2014 order denying the Baeks' motion to reconsider, denying them leave to file an amended complaint, and granting summary judgment to NCB in the Guaranty Action. Consequently, on November 4, 2014, NCB moved to amend its motion "so as to assert an alternative ground for dismissal based upon *res judicata*."[14]

C & L and the Baeks then filed their response to all pending motions in the federal RICO action. They argued that res judicata could not apply to their RICO claim because they never had filed a similar RICO claim in state court. Although they had attempted to amend their complaint to include such a claim, that motion had been denied. According to the Baeks, "a claim that was never filed could not be dismissed."[15] The

---

[10] R.1, ¶ 35.

[11] *See id*. ¶ 38.

[12] *See id*. ¶¶ 44–48.

[13] *See id*. ¶ 51.

[14] R.13 at 1.

[15] R.16 at 2.

Baeks *did not* argue that a dismissal on res judicata grounds would be premature because, at that time, there was no final judgment. The Baeks also maintained that the defendants' *Colorado River* doctrine analysis was incomplete and that a correct application of the doctrine required the court to exercise jurisdiction in the present case.[16]

In its reply in support of its motion to dismiss, NCB noted that "the *Colorado River* doctrine has been mooted by subsequent developments in the Circuit Court of Cook County dismissing the Plaintiffs' claims in their entirety and entering judgment in favor of [NCB]."[17] The final disposition of the Circuit Court action, it continued, "cement[ed] the bar of *res judicata*."[18] Consequently, given that there had been a final judgment in the Circuit Court action, NCB did not address the merits of the plaintiffs' *Colorado River* argument.[19]

On June 17, 2015, the district court entered a memorandum and order dismissing the plaintiffs' federal RICO complaint with prejudice on res judicata grounds. Applying Illinois law of res judicata, it determined that there had been a final judgment both in the Parallel Action and in the Guaranty Action;[20] there was identity of the parties (or their privies) in

---

[16] *See id*. at 3.

[17] R.17 at 1.

[18] *Id.*

[19] *See id*. at 5.

[20] *See* R.25 at 12, 16.

the Parallel and Guaranty Actions and the federal RICO action;[21] and those causes of action were the same as the federal RICO claim because they all involved "a single group of operative facts."[22] The district court therefore granted the defendants' motion to dismiss the complaint with prejudice.

On July 15, 2015, the Baeks filed a motion to reconsider under Federal Rule of Civil Procedure 59(e).[23] Their motion reiterated several of the arguments included in their opposition to the motion to dismiss.[24] The Baeks and C & L, however, also argued for the first time that the state court's adjudication of their claims was not final because the state appeal was still pending.[25] Consequently, they contended, the court "should not have dismissed the Plaintiffs' complaint with prejudice."[26] They reiterated that, applying the ten factors delineated in *Colorado River*, the district court should have allowed this case to proceed.[27] Finally, they requested that the district court vacate the order dismissing the complaint with prejudice and apply the *Colorado River* doctrine to determine

---

[21] *See id*. at 12–13, 16–17.

[22] *Id*. at 13–19.

[23] The plaintiffs actually filed two separate, but identical, Rule 59(e) motions. *See* R.27; R.28.

[24] For instance, the Baeks argued that the Circuit Court had given them permission to file an amended complaint and, therefore, the dismissal was not final, and that the RICO claim had not been adjudicated because it never had been included in a Circuit Court complaint.

[25] *See* R.27 at 6.

[26] *Id*. at 9.

[27] *See id*.

whether it should proceed with the case or abstain until the outcome of the appeal of the state case.[28]

In its response, NCB maintained that the motion "fail[ed] to raise any of the four proper grounds for reconsideration under Rule 59(e)."[29] Instead, "all of the arguments raised could have been presented at the time of the original briefing on the Defendants' Motion to Dismiss."[30] NCB maintained that, putting aside the procedural infirmities of the motion, the district court had not erred in granting the motion to dismiss because, even if there were not a final decision in the Guaranty or Parallel Action, there had been a final judgment in the state Foreclosure Action, which served as an independent bar to the federal RICO cause of action. Finally, NCB submitted that the authority on which the plaintiffs were relying for their *Colorado River* argument, *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641 (7th Cir. 2011) ("*Huon I*"), was "wholly misplaced" given our subsequent decision in *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556 (7th Cir. 2014) ("*Huon II*"), in which we affirmed the dismissal of the federal action based on claim preclusion.[31]

The district court granted in part and denied in part the Rule 59(e) motion. It noted that it previously had considered and rejected two of the plaintiffs' arguments.[32] The plaintiffs'

---

[28] *See id*.

[29] R.31 at 3.

[30] *Id*. at 3–4.

[31] *Id*. at 10.

[32] *See* R.37 at 5.

third argument—that the Circuit Court's adjudication was not final until the appeal had been resolved—had not been brought to the district court's attention in the underlying motion to dismiss.[33] Although this argument did not "rely on new law or new facts," the district court noted that it did "raise an important argument not yet passed upon."[34] The district court therefore considered the argument on the merits.

The district court observed that the Supreme Court of Illinois had held that, "[f]or purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."[35] Although there was some question whether this principle was equally applicable to res judicata, the district court followed the course we had suggested in *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995): it erred on the side of caution, reinstated the plaintiffs' action, and stayed all further proceedings pending the outcome of the state court appeal.[36] The district court's stay order issued on January 25, 2016.

Less than two months later, the state appellate court issued an order affirming the judgment rendered in the Circuit

---

[33] *See id*. at 5–6.

[34] *Id*. at 6.

[35] *Id*. (alteration in original) (quoting *Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986)).

[36] *See id*. at 6–7.

Court with respect to both the Guaranty Action and the Parallel Action. At that point, the district court granted NCB's motion to dismiss with prejudice.[37]

The Baeks and C & L timely appealed.

## II

## DISCUSSION

### A. Res Judicata

The Baeks contend that the district court erred in concluding that the present RICO claim is barred by res judicata because the state court never adjudicated this RICO complaint on the merits. We review a dismissal on res judicata grounds de novo. *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016). Because an Illinois state court rendered the judgment on which the application of res judicata is based, we apply Illinois law to determine whether res judicata bars the present action. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955 (7th Cir. 1997).

Under Illinois law of res judicata, "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). For res judicata to apply, "the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Id*. Illinois courts interpret "identity of cause of action" broadly such that

---

[37] *See* R.46.

"separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 893. The bar to subsequent litigation "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.* at 889. Finally, "the doctrine bars claims based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action." *Cabrera v. First Nat'l Bank of Wheaton*, 753 N.E.2d 1138, 1145 (Ill. App. Ct. 2001).

Here, the plaintiffs do not take issue with the district court's conclusion that the requirement of identity of parties has been met. That approach is well founded. The Guaranty Action involved NCB as the plaintiff and Mr. Baek and Ms. Baek-Lee as defendants. The present action was brought by the Baeks and C & L against NCB and several of its employees. The presence of C & L as a defendant does not preclude the operation of res judicata because Mr. Baek is the manager and sole member of C & L. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1034 (Ill. App. Ct. 2015) (noting that a director and sole shareholder of a limited liability company "had an equal stake in defending" a prior action involving the company and therefore "reject[ing] outright any contention that this action does not involve the same parties" simply because the director and sole shareholder of a limited liability company was not named in the prior action). Similarly, because employees are in privity with their employer for purposes of res judicata, *see Ross Advert., Inc. v. Heartland Bank & Trust Co.*, 969 N.E.2d 966, 976 (Ill. App. Ct.

2012), the presence of NCB employees as defendants in this action does not defeat res judicata. The same is true of the Parallel Action, which involved Mr. Baek, Ms. Baek-Lee, and Soo Corporation as plaintiffs, with NCB, Mr. Kivit, and John Does as defendants.

It also is beyond dispute that the present RICO claim and the Guaranty and Parallel Actions arise from a single group of operative facts: all of the actions center on NCB's administration of the construction loan issued to C & L. A comparison between the allegations contained in the Parallel Action and the federal RICO action demonstrate the similarity. In the Parallel Action, the plaintiffs alleged that NCB frustrated their efforts to file C & L's tax returns;[38] that NCB withdrew attorneys' fees from the operating account causing C & L's check to bounce;[39] that NCB demanded payment of additional funds from C & L on threat of default;[40] and that NCB committed notary fraud with respect to the signature of Ms. Baek-Lee.[41] These allegations parallel directly those found in the federal RICO action.[42]

---

[38] *See* R.5-6 at 5, ¶¶ 22–24.

[39] *See id*. ¶¶ 26–27.

[40] *See id*. at 5–6, ¶¶ 30–31.

[41] *See id*. at 11, ¶ 75.

[42] *See* R.1, ¶ 27 (alleging that NCB "demanded … 2009 income tax returns," but did not provide statements from the operating account necessary to complete the returns); *id*. ¶¶ 22–23 (alleging that NCB withdrew funds from the operating account as its attorney's fees, causing a check written by C & L to ComEd to bounce); *id*. ¶¶ 17–19 (alleging that NCB

Given the identity of the parties and the cause of action, the Baeks quite understandably focus their attack on the district court's conclusion that there was a final adjudication on the merits. They maintain that, because the May 30, 2013 order allowed them to replead new claims with respect to the Parallel Action, it was not a final order for purposes of res judicata. They also submit that their unpled RICO claim in the Parallel Action was simply one theory of relief based on the defendants' actions, and, therefore, the state court's ruling on other theories of relief did not affect the RICO claim.

We first turn to the argument that the May 30 order was not final because it allowed the Baeks to replead new claims. It is undisputed that the Baeks attempted to raise in Circuit Court the very RICO claim later brought in the district court and that this RICO claim could have been decided in the state case. *See River Park, Inc.*, 703 N.E.2d at 889. It also is undisputed that the Circuit Court ultimately dismissed the Parallel Action in which the Baeks attempted to raise this RICO claim. Finally, Illinois Supreme Court Rule 273 states that, "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action … operates as an adjudication upon the merits." Consequently, by virtue of the dismissal of the Parallel Action in Circuit Court, the Baeks' RICO claim was adjudicated on the merits.

The Baeks submit, nonetheless, that, because the Circuit Court's May 30, 2013 order granted them permission to file an amended complaint, that court "otherwise specifie[d]"

---

demanded additional payments on the claim that the loan was "out of balance"); *id*. ¶¶ 15, 43 (alleging notary fraud related to Ms. Baek-Lee's signature).

that the dismissal should not be on the merits. This argument is untenable. The May 30, 2013 dismissal order was *not* the final order in the Parallel Action. The May 30, 2013 order gave the Baeks twenty-eight days to file an amended complaint, but they failed to do so. When they sought permission (nearly ten months later) to file an amended complaint, the Circuit Court denied their motion.[43] In the same order, the Circuit Court granted summary judgment to NCB on the Guaranty Action, thus ending all litigation in the state court.[44] A motion to reconsider the grant of summary judgment in the Guaranty Action also was denied.[45] Neither of these later orders contained any limitations about the resolution of the merits of the action. There can be no question that there was a final adjudication on the merits of the RICO claim by the Circuit Court.

We now turn to the Baeks' second argument. They maintain that *Wilson v. Edward Hospital*, 981 N.E.2d 971 (Ill. 2012), allows them to pursue their RICO claim even though other theories of relief were rejected by the state court. We are not persuaded.

We pause to examine the Supreme Court of Illinois' decision in *Wilson* in some detail. This case involved a medical malpractice claim brought by an injured party and his mother against Edward Hospital, two physicians, their practice groups, and a nurse. They sought damages for injuries that occurred during a surgery to repair a broken leg. The plaintiffs alleged that the hospital was liable for the physicians'

---

[43] *See* R.21-48 at 2.

[44] *Id.*

[45] *See* R.21-51.

negligence because the physicians were "'agent[s] in law or in fact' of the hospital." *Id*. at 974. The trial court granted partial summary judgment to the hospital on the ground that the two physicians were not the hospital's *actual* agents. It further held, however, that issues of fact precluded summary judgment for the hospital regarding the physicians' *apparent* agency. The plaintiffs then voluntarily dismissed their complaint. When the plaintiffs refiled their action, they alleged that both physicians were "apparent agents of the hospital." *Id*. The hospital moved to dismiss on the ground that the trial court's prior determination that the physicians were not actual agents was a final judgment on the merits for purposes of res judicata. The trial court denied the hospital's motion to dismiss but granted its motion to certify the question to the state appellate court.

The question eventually reached the Supreme Court of Illinois, which held that the earlier ruling did not act as a bar to the plaintiffs' amended complaint. Initially, the court observed that one of the requirements of res judicata is a final judgment on the merits. "An order is final," the court explained, "if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Id*. at 978. The summary judgment entered by the trial court, however, did not end the litigation. *Id*. Moreover, "the order finding that the doctors were not the hospital's actual agents" did not "dispose[] of the rights of the parties on a separate branch of the controversy." *Id*. The court explained that actual agency and apparent agency are not causes of action, but, instead, "are merely part of the duty analysis in a case where the plaintiff seeks to hold the principal liable for the agent's alleged

negligence." *Id*. at 980. The court therefore held "that apparent agency and actual agency are not separate claims for purposes of *res judicata* and that no final order was entered." *Id*. at 980–81. Consequently, "[t]he trial court's grant of partial summary judgment on actual agency merely removed some of the allegations against the hospital from the case." *Id*. at 981. Because other "[a]llegations of agency remain[ed]," the plaintiffs still could have "prove[n] the hospital liable for negligence based upon their remaining allegations of apparent agency." *Id*.

In the case before us, there is no question that there has been a final adjudication on the merits. The Circuit Court dismissed the Baeks' Parallel Action and granted summary judgment to NCB in the Guaranty Action. This judgment was affirmed by the Illinois Appellate Court. This is not a situation where the trial court issued summary judgment on a discrete factual issue, leaving other factual issues to be resolved; the Circuit Court disposed of all aspects of the Baeks' claims and entered final judgment. Consequently, the Baeks' RICO claim is not saved by the Illinois Supreme Court's ruling in *Wilson*. The district court's dismissal of this claim on res judicata grounds was correct.

### B. *Colorado River* Doctrine

The Baeks maintain that the entire issue of res judicata would have been avoided if the district court had not stayed the federal action. In their view, NCB did not establish exceptional circumstances as required by the *Colorado River* doctrine. They submit that the district court should have adjudicated the federal RICO claim on the merits while awaiting the

ruling of the state appellate court.

The *Colorado River* "doctrine allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding elsewhere." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814 (7th Cir. 2016). In *Colorado River*, the Supreme Court recognized that "considerations of '[w]ise judicial administration,'" specifically regard for "conservation of judicial resources and comprehensive disposition of litigation," may counsel abstention by federal courts in the face of pending actions in state court concerning the same matter. 424 U.S. at 817 (alterations in original) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The Court set forth several considerations that might make abstention appropriate, including: "the court first assuming jurisdiction over property"; "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." *Id*. at 818 (citations omitted). The Court emphasized that "[n]o one factor is necessarily determinative," but that a court should "carefully consider[] … both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *Id*. at 818–19.

In the wake of *Colorado River*, we have adopted a two-part analysis to guide judicial considerations of whether this sort of abstention is appropriate. "First, the court must determine whether the state and federal court actions are parallel." *Freed v. J.P. Morgan Chase Bank, N.S.*, 756 F.3d 1013, 1018 (7th Cir. 2014). If the proceedings are parallel, the court must determine if abstention is proper by weighing ten non-exclusive factors. *Id*. These are:

(1) whether the state has assumed jurisdiction

over property;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) the source of governing law, state or federal;

(6) the adequacy of state-court action to protect the federal plaintiff's rights;

(7) the relative progress of state and federal proceedings;

(8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim.

*Id*. (quoting *Tyrer v. City of South Beloit*, 456 F.3d 744, 754 (7th Cir. 2006)). "A district court's decision to stay federal proceedings pending the resolution of a state court action is reviewed under an abuse of discretion standard." *Id*.

There have been instances, however, when, despite the district court's failure to engage in this two-step process or to consider meticulously each of the ten factors, we nevertheless have held abstention to be appropriate. Most notable among these is *Rogers*, 58 F.3d 299. In *Rogers*, an Illinois school district and two of its residents challenged a referendum in favor of detaching a parcel of one school district and annexing it to another; they did so in both state and federal court. The state court ruled against the plaintiffs on the merits, and the federal court abstained under *Younger v. Harris*, 401 U.S. 37 (1971). The plaintiffs appealed in both cases.

On appeal of the federal action, we concluded that the district court's invocation of *Younger* abstention was error and that the plaintiffs' claims, instead, "should be analyzed under the rules for claim-splitting." *Rogers*, 58 F.3d at 301. We therefore looked to Illinois law to determine what preclusive effect should be given to the state court's judgment. Because of conflicting case law, however, we had "no idea what the law of Illinois [wa]s on the question whether a pending appeal destroys the claim preclusive effect of a judgment." *Id*. at 302. As a result, we adopted the following approach:

> Under the circumstances, a stay rather than immediate decision is the prudent course. A federal judge confronted with duplicative litigation need not barge ahead on the off-chance of beating the state court to a conclusion. It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–21 (1976). A stay requires a good justification; here, although plaintiffs' state and federal suits got underway contemporaneously, the state suit pulled far ahead while the parties debated *Younger* in the district court. Plaintiffs themselves, by choosing to file two suits, supplied strong reason for a stay. There is no excuse for trying to decide the merits immediately— but also no reason (yet) to dismiss the suit, because, if the state case should break down in a way that avoids the preclusive effect of the

> judgment, plaintiffs would be entitled to a deci-
> sion on the merits from the federal court.

*Rogers*, 58 F.3d at 302 (citations omitted).

We followed this approach again in *Hearne v. Board of Education of the City of Chicago*, 185 F.3d 770 (7th Cir. 1999). In *Hearne*, after a public school teacher's employment had been terminated, he instituted both a state action alleging violations of the state constitution and statutes, as well as a federal suit alleging federal constitutional and statutory violations. The state court rendered a partial judgment for the teacher, which was appealed. The district court noted that if the teacher were "able to hold on to his judgment in state court, there [wa]s no need for [it] to decide any of his claims." *Hearne v. Bd. of Educ. of City of Chi.*, 996 F. Supp. 773, 777 (N.D. Ill. 1998). It therefore abstained under both *Younger* and *Colorado River*.

On appeal, we observed that "it appear[ed] that this case is … one in which proceedings in the state trial court have come to a close and further appellate review is possible." *Hearn*, 185 F.3d at 778. Unlike the district court, however, we did not "find *Younger* particularly useful" because "the kind of extraordinary state interest that underlies the *Younger* command to abstain in favor of a pending state court proceeding d[id] not appear to be present." *Id*. "Yielding to the state court process under the 'wise judicial administration' principles of *Colorado River*," however, was "another matter." *Id*. (quoting *Colorado River*, 424 U.S. at 817). We explained that

> *Colorado River* acknowledged that more than the simple pendency of an action in state court pertaining to the same matter as a suit in federal

> court is necessary before the federal court
> should dismiss or stay an action. On the other
> hand, as in *Rogers*, we have more than that: the
> state trial court has actually concluded its con-
> sideration of the case. The clarity of the Illinois
> law of preclusion (which applies here) on the ef-
> fect of a judgment that is still being appealed
> has not changed appreciably since we decided
> *Rogers*. Nevertheless, the principles of sound ju-
> dicial administration that animated the decision
> in *Colorado River* caused this court to require a
> stay of the federal proceedings in *Rogers*.

*Id.* (citation omitted).

Here, the district court was faced with the same dilemma that we confronted in both *Rogers* and *Hearn*. In response to the plaintiffs' federal RICO complaint, NCB filed a motion to dismiss or to stay the federal action. Before the plaintiffs could respond, the state court entered summary judgment in the Guaranty Action and denied both the Baeks' motion to recon-sider in the Guaranty Action and the Baeks' motion to amend their complaint in the Parallel Action. At that point, and while the Baeks' state court appeal was pending, NCB asked for leave to amend its motion to dismiss to include the ground of res judicata. Heeding our guidance to abstain in circum-stances like the present one pending the resolution of state court appeals, the district court "follow[ed] suit" and stayed the action pending the outcome of the state appeal.[46] Because the district court acted in consonance with *Rogers* and *Hearn*, it did not abuse its discretion, but rather demonstrated sound

---

[46] R.37 at 7.

judgment.

The plaintiffs, however, fault the district court for failing to engage in a more searching *Colorado River* analysis. They maintain that our decision in *Huon I*, 657 F.3d 641, mandates such an approach. We cannot accept this contention.

In *Huon I*, following the termination of his employment, an attorney filed an administrative charge of race and national origin discrimination with the Illinois Department of Human Rights and the EEOC. Before the charges were resolved, he also filed an action in state court against three attorneys at his former firm, alleging that they had made false and defamatory statements about his work on an annual performance evaluation. The state court granted the defendants' motion to dismiss; Huon appealed the state court judgment.

The EEOC subsequently issued a right to sue letter, and Huon filed an action in federal court alleging race and national origin discrimination, as well as a pendent state-law claim for tortious interference with a prospective business relationship. The defendants moved to dismiss for failure to state a claim or, alternatively, to stay the state law claim under *Colorado River*. Before Huon could respond, the district court ordered supplemental briefing on the application of "the doctrines of claim splitting and res judicata to this action." *Id*. at 644 (internal quotation marks omitted). At this point, the defendants urged the district court to stay proceedings on all of the claims; according to the defendants, the state court action included "general allegations of racial discrimination and bias" and therefore was substantially similar to the action before the district court. *Id*. The district court agreed. It concluded that the actions were parallel because they involved a common core of operative facts. It then found that three of the

ten *Colorado River* factors weighed in favor of abstention. It therefore stayed the federal action pending resolution of the state court appeal.

We reversed. We noted that the district court committed several missteps in its analysis. First, instead of assessing whether the actions were parallel for purposes of *Colorado River*, the district court had assessed whether the claims arose from the same core of operative facts for purposes of res judicata. *See id*. at 646. However, "even under the arguably more liberal analysis for claim preclusion, the district court's reasoning f[ell] short." *Id*. We observed that "[t]he court concluded that the two cases ar[o]se from the same facts because Huon allege[d] in both suits that he performed his job satisfactorily." *Id*. But it was not clear to us whether, under these circumstances, "Illinois would find impermissible claim-splitting," and, therefore, this question had to be explored on remand. *Id*. at 647.

Moreover, had the district court applied the correct test for determining whether the actions were parallel under *Colorado River*, it likely would have reached a different result. We explained that "[o]ne important factor is whether both cases would be resolved by examining largely the same evidence." *Id*.

> Although all of Huon's claims relate[d] to alleged mistreatment he suffered at work, the evidence necessary to establish defamation or emotional distress would be different from that required to prove discrimination. … [I]t [wa]s unlikely that allegations of discrimination would come up in his state suit, despite Huon's

> passing references in his state complaint to dis-
> criminatory treatment.

*Id.*

After concluding that the district court's parallel analysis was flawed, we also noted that its treatment of the ten factors was lacking. We ventured that "the real motivation behind the district court's decision was its guess that *res judicata* would eventually preclude all of Huon's claims in federal court." *Id.* at 649. "Huon's federal case," we continued, "ha[d] been languishing for almost two years on the assumption that the Illinois circuit court's judgment w[ould] someday be affirmed, but that outcome [wa]s far from certain." *Id.* at 650. Consequently, we vacated the district court's stay and remanded for further proceedings.

Here the district court's judgments are not riddled with the same legal infirmities and factual assumptions as in *Huon I*. After NCB asserted a res judicata defense, the district court properly focused on the three requirements for res judicata under Illinois law.[47] It examined the allegations contained in the Guaranty and Parallel Actions compared to the federal RICO action, applied the correct legal standard, and concluded that the state and federal actions arise from a single group of operative facts.[48] Thus, the district court did not merely venture a "guess" that res judicata would apply if the judgment were affirmed on appeal; it thoroughly and correctly reasoned that the Guaranty and Parallel Actions would preclude the federal RICO claim.

---

[47] *See* R.25 at 11.

[48] *See id.* at 13–19.

Moreover, unlike in *Huon I*, the Baeks do not dispute that the federal RICO action and the Guaranty and Parallel Actions are "parallel" for purposes of *Colorado River*. Indeed, such an argument would be insupportable.

> Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citations omitted) (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). Here, in the federal RICO claim, like the Guaranty and Parallel Actions, the parties were litigating the propriety of NCB's actions with respect to the administration of the construction loan. Just by way of example, both the federal and the state actions centered on whether NCB improperly declared the construction loan to be in default; whether, consistent with the loan and modification agreements, NCB could demand additional security because the loan was "out of balance"; and whether there was fraud in the execution of loan documents and notarizations.

It is true that, like the district court in *Huon I*, the district court here did not articulate and analyze each of the ten, non-exclusive *Colorado River* factors before staying the action. Nevertheless, in this case, we do not see how the district court could have reached a reasoned decision to allow the federal action to go forward.

Looking at the *Colorado River* factors, *see Freed*, 756 F.3d at 1018, the desire to avoid piecemeal litigation here clearly weighed in favor of abstention. The same is true with respect to the order in which the jurisdiction was obtained: the federal action was filed three and one-half years after the Foreclosure and Guaranty Actions. Moreover, there is no question that the state forum was adequate to address the RICO claim, as this was the initial forum in which the Baeks attempted to pursue that claim. The relative progress of the proceedings also weighs heavily in favor of abstention; the state actions had been litigated for over four years and had reached a final judgment in the Circuit Court at the time the district court entered its stay. Finally, the vexatious nature of the federal claim supports abstention here. On April 24, 2014, the Baeks attempted to file in Circuit Court a RICO claim—identical to that in the present action—ten months after the Circuit Court's deadline for filing an amended complaint had expired. Only one month later, the Baeks filed the present RICO action in federal district court. Clearly, this was an effort to try to circumvent the Circuit Court's long-past deadline and get a second bite at the apple.

The nature and length of the litigation history among the parties weigh heavily in favor of abstention in the federal action. Although the district court did not consider these in the manner we have set forth, it was well aware of this history, which provided the factual backdrop for its abstention order. Consequently, it did not abuse its discretion in ordering the federal RICO action stayed pending resolution of the state appeal of the Guaranty and Parallel Actions.

Finally, and most importantly, even if we had detected some deficiency in the district court's analysis, a remand here

would not be in order. At this point, the state appellate court has affirmed the judgments in the Guaranty and Parallel Actions, and, therefore, there is, indisputably, a final judgment on the merits. The situation, therefore, is indistinguishable from the one we faced in *Huon II*, 757 F.3d 556, the appeal following the remand in *Huon I*. After our remand, the defendants moved for judgment on the pleadings based on claim preclusion. Applying the same test for preclusion that we have applied here,[49] the district court entered judgment for the defendants, and Huon again appealed. We concluded that the district court correctly applied this standard, and we affirmed. As in *Huon II*, we now have a final state court judgment, and res judicata bars the Baeks' federal RICO claim. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) ("When the cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata).").

## Conclusion

For the reasons set forth in this opinion, the judgment of the district court dismissing the plaintiffs' complaint as barred by res judicata is affirmed.

AFFIRMED

---

[49] *See supra* at 14–18.